FILED 2008 MAY 15 PM 12:2[?]
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2008 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> LORI DREW, </br></br> Defendant. | Case No. CR **CR08-00582** </br></br> **I N D I C T M E N T** </br></br> [18 U.S.C. § 371: Conspiracy; 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii): Accessing Protected Computers to Obtain Information; 18 U.S.C. § 2(a), (b): Aiding and Abetting and Causing an Act to Be Done] |

The Grand Jury charges:

**COUNT ONE**

[18 U.S.C. § 371]

**INTRODUCTION**

**DEFENDANT LORI DREW & M.T.M.**

1.   At all times relevant to this indictment, defendant LORI DREW ("defendant DREW") was an individual residing in O'Fallon, Missouri.  Defendant DREW possessed at least one computer at her residence and accessed the Internet from a telephone line located there.

MCK:CMZ:CMZ

2. At all times relevant to this indictment, victim M.T.M. was a 13 year-old girl who resided in O'Fallon, Missouri. M.T.M. possessed at least one computer at her residence and accessed the Internet from a telephone line located there.

**COMPUTER TERMINOLOGY**

<u>Internet Service Providers</u>

3. Internet Service Providers ("ISP") offer their customers access to the Internet using telephone or other telecommunications lines. ISPs provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through their ISPs' servers. ISPs remotely store electronic files on behalf of their customers, and may provide other services unique to each particular ISP.

<u>Log Files</u>

4. Log files are computer-generated lists that contain various types of information regarding the activities of a computer. They are often chronological, and record data such as the time of access to certain records, the processes running on a computer, and the usage of certain computer resources.

<u>Server</u>

5. A "server" is a centralized computer that provides services for other computers connected to it via a network. The other computers attached to a server sometimes are called "clients." In a large company, it is common for individual employees to have client computers at their desktops. When the employees access their e-mail, or access files stored on the network itself, those files are pulled electronically from the server, where they are stored, and are sent to the client's

computer via the network. In larger networks, it is common for servers to be dedicated to a single task. For example, a server that is configured so that its sole task is to support a World Wide Web site is known simply as a "web server."

Social Network Service

6. A social network service focuses on building online communities of people who share interests and activities, or who are interested in exploring the interests and activities of others. Most social network services are web based and provide a variety of ways for users to interact, such as e-mail and instant messaging services.

**FOX INTERACTIVE MEDIA, INC. & WWW.MYSPACE.COM**

7. At all times relevant to this indictment, Fox Interactive Media, Inc. ("FIM") was a corporation based in Beverly Hills, California, which operated a website located at www.myspace.com ("MySpace"). As the operator of that website, FIM acted as an Internet Service Provider.

8. At all times relevant to this indictment, FIM's server computers were located in Los Angeles County, within the Central District of California, and operated in interstate and foreign commerce and communication.

9. At all times relevant to this indictment, MySpace was a website that offered social network services. As a consequence, MySpace provided a forum where individuals who had registered as members of MySpace could post on-line personal profiles. The profiles gave users an opportunity to post information about themselves as well as other content, including text, photographs, video, and music. MySpace also provided members with access to

certain communication services that allowed MySpace members to communicate with each other through the MySpace servers operated by FIM in Los Angeles County, California (the "MySpace servers"). Although any computer user with access to the Internet could visit MySpace, only members of MySpace could view certain content on the website or use the MySpace communication services.

10. The MySpace communication services included, among other things, instant messaging and private messaging services. The instant messaging service allowed users or groups of users to communicate with one another by sending text in real-time. The private messaging service was analogous to person-to-person e-mail messages. To access these services, or to view content on MySpace, members were required to access the MySpace servers to retrieve the information.

11. To become a MySpace member, and thereby gain access to certain content and the communication services, prospective members were required to submit registration information, including name and date of birth, and agree to certain Terms of Service (the "MySpace TOS") that regulated their use of the website. Prospective members were not allowed to become members unless they provided the requested registration information and agreed to the MySpace TOS by checking a box stating that they agreed to the MySpace TOS. A copy of the applicable MySpace TOS was readily available to prospective members, members, and users of the website, who could click on a link titled "Terms of Service" or "Terms" to be directed to a web page where prospective members, members, and users of the website could review those rules.

12. Among other things, the MySpace TOS required prospective

members, members, and users of the website to:

    a. Provide truthful and accurate registration information;

    b. Refrain from using any information obtained from MySpace services to harass, abuse, or harm other people;

    c. Refrain from soliciting personal information from anyone under 18;

    d. Refrain from promoting information that they knew was false or misleading;

    e. Refrain from promoting conduct that was abusive, threatening, obscene, defamatory, or libelous; and

    f. Refrain from posting photographs of other people without their consent.

13. The MySpace TOS explained that only conduct consistent with the MySpace TOS was authorized and that MySpace retained the right to, among other things, investigate, take appropriate legal action, and terminate any member who violated the MySpace TOS.

### OBJECT OF THE CONSPIRACY

14. Beginning in or about September 2006, and continuing to on or about October 16, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant DREW and co-conspirators known to the Grand Jury ("the co-conspirators") knowingly conspired and agreed with each other intentionally to access a computer used in interstate and foreign commerce without authorization and in excess of authorized access and, by means of an interstate communication, obtain information from that computer to further a tortious act, namely, intentional infliction of emotional distress, in violation of 18 U.S.C. §§ 1030(a)(2)(C),

(c)(2)(B)(2).

## MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

15. The object of the conspiracy was to be accomplished in substance as follows:

   a. In violation of the MySpace TOS, using a computer in O'Fallon, Missouri, defendant DREW and the co-conspirators registered as a member of MySpace, and obtained a MySpace account, under a fictitious name.

   b. In violation of the MySpace TOS, using a computer in O'Fallon, Missouri, defendant DREW and the co-conspirators used the MySpace account obtained under the fictitious name to obtain information from a juvenile MySpace member.

   c. In violation of the MySpace TOS, using a computer in O'Fallon, Missouri, defendant DREW and the co-conspirators used the information obtained over the MySpace computer system to torment, harass, humiliate, and embarrass the juvenile MySpace member.

   d. After the juvenile MySpace member killed herself, defendant DREW and the co-conspirators, using a computer located in O'Fallon, Missouri, deleted the account information for the account opened under the fictitious name from the MySpace computer system in order to obstruct detection of their scheme.

## OVERT ACTS

16. In furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendant DREW and the co-conspirators committed, caused to be committed, and aided and abetted various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including the following:

Overt Act 1: On or about September 20, 2006, defendant DREW and the co-conspirators obtained at MySpace an on-line account for a male juvenile purportedly named "Josh Evans" (the "Josh Evans MySpace Account") by falsely stating, among other things, that they were a sixteen year old boy named "Josh Evans," when, in truth and in fact, as defendant DREW and the co-conspirators well knew, they were not a sixteen year old boy.

Overt Act 2: On or about September 20, 2006, defendant DREW and the co-conspirators posted at the Josh Evans MySpace Account a photograph of a boy without that boy's knowledge or consent.

Overt Act 3: On or about September 20, 2006, defendant DREW and the co-conspirators, using the Josh Evans MySpace Account and the alias "Josh Evans," contacted M.T.M. over the MySpace computer system.

Overt Act 4: On or about September 22, 2006, defendant DREW and the co-conspirators, using the alias "Josh Evans," told M.T.M. that she was "sexi."

Overt Act 5: During the week of September 24, 2006, defendant DREW and the co-conspirators, using the alias "Josh Evans," invited M.T.M. to touch the "snake" of "Josh Evans."

Overt Act 6: On or about September 26, 2006, defendant DREW and the co-conspirators altered the "Josh Evans" profile to flirt with M.T.M..

Overt Act 7: On or about October 7, 2006, defendant DREW and the co-conspirators, using the Josh Evans MySpace Account and the alias "Josh Evans," told M.T.M. that "Josh Evans" was moving away.

Overt Act 8: On or about October 7, 2006, defendant DREW and the co-conspirators, using the Josh Evans MySpace Account and the

alias "Josh Evans," induced M.T.M. to write: "aww sexi josh ur so sweet if u moved back u could see me up close and personal lol."

Overt Act 9: On or about October 10, 2006, defendant DREW and the co-conspirators, using the Josh Evans MySpace Account and the alias "Josh Evans," induced M.T.M. to write: "Heyy babe!! Call me sometime 636 [xxxxxxx]! Its the cell. i love you so much."

Overt Act 10: On or about October 16, 2006, the co-conspirators, using the Josh Evans MySpace Account and the alias "Josh Evans," told M.T.M., in substance, that the world would be a better place without M.T.M. in it.

Overt Act 11: On or about October 16, 2006, after learning that M.T.M. had killed herself, defendant DREW caused the Josh Evans MySpace Account to be deleted.

Overt Act 12: On or about October 16, 2006, after learning that M.T.M. had killed herself, defendant DREW directed a juvenile who had knowledge of the Josh Evans MySpace Account to "keep her mouth shut" and to refrain from trying to access the Josh Evans MySpace Account.

## COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii); §§ 2(a), (b)]

17. The Grand Jury repeats and re-alleges paragraphs 1 through 13, 15, and 16 of this Indictment as if fully set forth herein.

18. On or about the following dates, defendant DREW, using a computer in O'Fallon, Missouri, intentionally accessed and caused to be accessed a computer used in interstate and foreign commerce, namely, the MySpace servers located in Los Angeles County, California, within the Central District of California, without authorization and in excess of authorized access, and, by means of an interstate communication, obtained and caused to be obtained information from that computer to further tortious acts, namely, intentional infliction of emotional distress on M.T.M.:

| COUNT | DATE | UNAUTHORIZED ACCESS |
|---|---|---|
| TWO | 9/20/06 | In violation of MySpace TOS, accessed MySpace servers to obtain information regarding M.T.M. |
| THREE | 9/26/06 | In violation of MySpace TOS, accessed MySpace servers to obtain information regarding M.T.M. |

| COUNT | DATE | UNAUTHORIZED ACCESS |
|---|---|---|
| FOUR | 10/16/06 | In violation of MySpace TOS, accessed MySpace servers to obtain information regarding M.T.M. |

A TRUE BILL

/S/
_____
FOREPERSON

THOMAS P. O'BRIEN
United States Attorney

*Christine C. Ewell* (signature)

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

C. MICHAEL ZWEIBACK
Assistant United States Attorney
Chief, Cyber and Intellectual Property Crimes Section

WESLEY HSU
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual Property Crimes Section

MARK C. KRAUSE
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section