H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753
deansteward@fea.net

Attorney for Defendant
Lori Drew

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>      Plaintiff,<br><br>  vs.<br><br>LORI DREW,<br><br>      Defendant. | Case No. CR-08-582-GW<br><br>NOTICE OF MOTION; MOTION TO DISMISS INDICTMENT-UNCONSTITUTIONAL DELEGATION OF PROSECUTORIAL POWER;POINTS AND AUTHORITIES<br><br>Date: Sept. 4, 2008<br>Time: 8:30 AM |

TO: UNITED STATES ATTORNEY THOMAS O'BRIEN AND ASST. U.S ATTORNEY MARK KRAUSE, please take notice that on September 4, 2008 at 8:30 AM, defendant, through counsel, will bring the attached motion to dismiss the indictment in the courtroom of the Honorable George Wu, United States District Judge, 312 N. Spring St., Courtroom 10, Los Angeles, California.


Dated: July 23, 2008          s./ H. Dean Steward
                              H. Dean Steward
                              Counsel for Defendant
                              Lori Drew

- 1 -

**MOTION**

COMES NOW defendant Lori Drew, together with counsel, and moves this honorable court for an order dismissing the instant indictment pursuant to Federal Rules of Procedure 12(b). As set forth below, the indictment violates constitutional due process by delegating prosecutorial powers, and it must be dismissed.

Dated: July 23, 2008
San Clemente, California    s./ H. Dean Steward
                             H. Dean Steward
                             Counsel for Defendant
                             Lori Drew

**POINTS AND AUTHORITIES**

I. BACKGROUND

The defense here challenges the government's delegation to the power to set guidelines and terms of what will be a criminal law violation to individuals and entities. The public in general, (and defendant Drew in particular), are denied due process under the Constitution when private parties, not the government, are given these rights and powers.

II. FACTS

According to the indictment, defendant Lori Drew and others set about creating a MySpace social network on line personal profile in the Fall of 2006. The profile was of a teenage boy. The indictment further alleges that Ms. Drew and others set up the profile to gain information from one M.T.M., a teenager. In setting up the profile, the government alleges that Ms. Drew and others violated the terms of service [hereinafter TOS] that MySpace maintains as a feature of their website. The government theory is that a violation of any TOS renders any accessing of a website by the violator to be "unauthorized", and therefore potentially a violation of 18 USC §1030(a)(2)(C) and (c)(2)(B)(ii) [hereinafter §1030],

The profile was open for 29 days, during which M.T.M. sent messages back and forth to the fictional person allegedly named "Josh Evans"[1]. On the last of those 29 days, the messages from

---

[1]  The defense believes that at least two other persons and perhaps as many as four had the "Josh Evans" password and communicated to M.T.M. as "Josh Evans".

- 3 -

1   several people to M.T.M., and her responses, became heated, and
2   M.T.M. soon thereafter took her own life.

3       The facts in this matter are deeply in dispute. For the
4   purposes of a dismissal motion only, the court is limited to the
5   four corners of the indictment. U.S. v. Edmonds 103 F.3d 822 (9th
6   Cir. 1996).

7   III. DISCUSSION

8       Under §1030, virtually anyone, (be it giant MySpace, the
9   social network, or an individual computer owner), can determine
10  whether access to a server or site is authorized, and they can
11  determine under what circumstances. A computer owner can set the
12  scope of authorization by contractual language, by a TOS. This can
13  lead to criminal violations for those who run afoul of the
14  TOS/contract.

15      Turning to this matter, MySpace dictated, through its TOS,
16  what acts supposedly constituted a crime. What the government in
17  its view of §1030 has done is to delegate the responsibility of
18  deciding what conduct will be criminal to private parties like
19  MySpace.

20      In Cybercrime's Scope: Interpreting "Access" and
21  "Authorization" in Computer Use Statutes, Kerr, 78 N.Y.U.L.Rev.
22  1596 (2003) Professor Orin Kerr points up the chilling effect of
23  allowing an entity such as MySpace to anchor and, in truth, dictate
24  §1030 charges:

25

26      "Imagine that a Website owner announces [and puts in his
27      TOS] that only right handed people can view

28                              - 4 -

his Website, or perhaps only friendly people. Under the contract-based approach, a visit to the site by a left-handed or surly person is an unauthorized access that may trigger state and federal criminal laws. A computer owner could set up a public web page, announce that 'no one is allowed to visit my web page', and then refer for prosecution anyone who clicks on the site out of curiosity. By granting the computer owner essentially unlimited authority to define authorization, the contract standard delegates the scope of criminality to every computer owner."


Id. at p. 1650,51


Allowing computer owners to set terms that can cause law violations is similar to the vintage cases in the Supreme Court where governmental powers were unconstitutionally delegated between governmental agencies. The Supreme Court invalidated the delegation of these powers in the 1930's in a series of cases. See Carter v. Carter Coal Co. 298 U.S. 238 (1936); A.L.A. Schechter Poultry Corp. v. U.S. 295 U.S. 495 (1935) and Panama Refining Co. v. Ryan 293 U.S. 388 (1935).

For example, at issue in Panama Refining was a delegation to the President of authority to prohibit interstate transportation of what was known as "hot oil" – oil produced in excess of quotas set by state law. The problem was that the Act provided no guidance to the President in determining whether or when to exercise this

1    authority, and required no finding by the President as a condition

2    of exercise of the authority. Congress "declared no policy, . . .

3    established no standard, [and] laid down no rule," but rather "left

4    the matter to the President without standard or rule, to be dealt

5    with as he pleased." Id. at 293 U.S. at 430.

6        At issue in Schechter was a delegation to the President of

7    authority to promulgate codes of fair competition that could be

8    drawn up by industry groups or prescribed by the President on his

9    own initiative. The codes were required to implement the policies

10    of the Act, but those policies were so general as to be nothing

11    more than an endorsement of whatever might be thought to promote

12    the recovery and expansion of the particular trade or industry. The

13    President's authority to approve, condition, or adopt codes on his

14    own initiative was similarly devoid of meaningful standards, and

15    virtually unfettered. The Act supplied "no standards" for any trade

16    or industry group, and, unlike other broad delegations that had

17    been upheld, did not set policies that could be implemented by an

18    administrative agency required to follow "appropriate

19    administrative procedure." "Instead of prescribing rules of

20    conduct, [the Act] authorize[d] the making of codes to prescribe

21    them." Id. 295 U.S. at 541.

22        Here, §1030 has delegated power, not between branches of

23    government, but to every day citizens and entities. But like the

24    older cases above, there are no standards for computer owners when

25    setting up TOS's. At the same time, however, these owners now have

26    the power to set guidelines, rules and terms that can, if violated,

27    cause criminal liability. Such power, by the government's

28

- 6 -

1    interpretation of §1030, is now in the hands of Internet behemoths

2    like MySpace, or anyone or any entity that can get on the Internet

3    and set up a rudimentary Website. The enormous danger in this

4    interpretation is well set out in Professor Kerr's examples, above.

5         In testimony before Congress in 1992, the Vice President and

6    General Counsel of the Computer and Communications Industry

7    Association warned, "You do not want to be accidently taking a

8    large percentage of the American people, either small businesses or

9    citizens, into the gray area of criminal law." <u>U.S. v. LaMacchia</u>

10   871 F. Supp. 535, 544 (D. Mass. 1994), n. 18. The indictment here

11   does just that, with no due process protections at all. Almost any

12   computer owner can set up whatever arbitrary and unique rules they

13   want, and a violation of those rules can lead to a §1030

14   prosecution.

15   IV. CONCLUSION

16        Simply put, access that merely breaches a contract

17   conditioning access should not suffice to trigger criminal

18   liability. If violating user agreements is a crime, millions of

19   Americans are probably committing crimes on a daily basis and don't

20   know it.

21        Basing a federal prosecution on TOS violations, on a contract

22   theory, denies due process, in that "it allows a computer owner to

23   harness the criminal law at his or her discretion, using his or her

24   unilateral power to control authorization by contract as a tool to

25   criminalize any viewpoint of status the owner wishes to target."

26   *Cybercrime's Scope: Interpreting "Access" and "Authorization" in*

27

28

*Computer Use Statutes* <u>supra</u> at p. 1658. Such a delegation is constitutionally infirm, and the indictment must be dismissed.

Dated: July 23, 2008
San Clemente, California          <u>s./ H. Dean Steward</u>
                                    H. Dean Steward
                                    Counsel for Defendant
                                    Lori Drew

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

   I am not a party to the above entitled action. I have caused, on July 23, 2008, service of the defendant's:

**NOTICE OF MOTION; MOTION TO DISMISS; POINTS AND AUTHORITIES**

On the following parties electronically by filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies counsel for that party.

**AUSA Mark Krause**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2008

H. Dean Steward

H. Dean Steward