THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (SBN 198142)
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual
Property Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3493
    Facsimile: (213) 894-8601
    Email: mark.krause@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR NO. 08-582-GW |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILING TO STATE A CLAIM |
| v. | |
| LORI DREW, | Hearing Date: September 4, 2008 |
| Defendant. | Hearing Time: 8:30 a.m. |
| | Trial Date: October 7, 2008 |
| | Trial Time: 8:00 a.m. |
| | Place: Courtroom of the Hon. George H. Wu |

    Plaintiff United States of America, by and through its
counsel of record, Assistant United States Attorney Mark C.
Krause, hereby files this opposition to defendant's motion to
dismiss for failure to state a claim.

\\\

\\\

\\\

1    This opposition is based on the attached memorandum of

2   points and authorities, the files and records in this case, and

3   whatever evidence or argument this Court may consider.

4   Dated: August 12, 2008

5                           Respectfully submitted,

6                           THOMAS P. O'BRIEN
                            United States Attorney

7
                            CHRISTINE C. EWELL
8                           Assistant United States Attorney
                            Chief, Criminal Division
9

10
                            MARK C. KRAUSE
11                          Assistant United States Attorneys

12                              Attorneys for Plaintiff
                                United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      2

**TABLE OF CONTENTS**

Description                                                          Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . .  ii

I    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . .  1

II   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . .  3

     A.   BACKGROUND ON MYSPACE.COM . . . . . . . . . . . . . . .  3

     B.   DEFENDANT EMBARKS ON SCHEME TO
          OBTAIN INFORMATION ABOUT M.T.M. . . . . . . . . . . . .  4

     C.   DEFENDANT AND HER CO-CONSPIRATORS
          USE THE FAKE MYSPACE ACCOUNT . . . . . . . . . . . . .  5

III  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . .  7

     A.   THE COURT SHOULD DENY DEFENDANT'S MOTION
          TO DISMISS BECAUSE THE INDICTMENT
          ADEQUATELY STATES A CRIME UNDER THE
          COMPUTER FRAUD AND ABUSE ACT . . . . . . . . . . . . .  7

          1.   Because the Indictment Tracks the
               Words of the Applicable Statutes,
               Unambiguously Sets Forth All the
               Elements Necessary to Constitute
               the Crimes Alleged, and Allows
               Defendant to Plead Double Jeopardy,
               It Is Sufficient . . . . . . . . . . . . . . . .  8

          2.   Defendant's Demand for Additional
               Factual Detail Is Improper . . . . . . . . . . .  14

     B.   UNITED STATES V. LAMACCHIA IS INAPT . . . . . . . .  18

IV   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .  20

i

# TABLE OF AUTHORITIES

Description                                                      Page(s)

**FEDERAL CASES**

Brandon v. United States,
   190 F.2d 175 (9th Cir. 1951) . . . . . . . . . . . . . . 14

Cook v. United States,
   354 F.2d 529 (9th Cir. 1965) . . . . . . . . . . . . . . 15

Danielson v. United States,
   321 F.2d 441 (9th Cir. 1963) . . . . . . . . . . . . . . 9

District of Columbia v. John R. Thompson Co.,
   346 U.S. 100 (1953) . . . . . . . . . . . . . . . . . . 20

Dudick v. Vaccarro,
   2007 WL 1847435 (M.D. Pa. Jun. 25, 2007) . . . . . . . . 12

Hamling v. United States,
   418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . . . 8

Hewlett-Packard Co. v Byd:Sign, Inc,
   2007 WL 275476 (E.D. Tex. Jan. 25, 2007) . . . . . . . . 12

Intuit Privacy Litigation,
   138 F. Supp. 2d 1272 (C.D. Cal. 2001) . . . . . . . . . 12

P.C. of Yonkers, Inc. v. Celebrations!
The Party and Seasonal Superstore,
   2007 WL 708978 (N.D.N.J. Mar. 5, 2007) . . . . . . . . . 12

Pennsylvania Department of Corrections v. Yeskey,
   524 U.S. 206 (1998) . . . . . . . . . . . . . . . . . . 19

Russell v. United States,
   369 U.S. 749 (1962) . . . . . . . . . . . . . . . . . . 8

Stein v. United States,
   313 F.2d 518 (9th Cir. 1962) . . . . . . . . . . . . . . 9

United States v. Buckley,
   689 F.2d 893 (9th Cir. 1982) . . . . . . . . . . . . . passim

United States v. Cecil,
   608 F.2d 1294 (9th Cir. 1979) . . . . . . . . . 15, 16, 17

United States v. Critzer,
   951 F.2d 306 (11th Cir. 1992) . . . . . . . . . . . . . 15

ii

**TABLE OF AUTHORITIES (cont'd.)**

Description                                                      Page(s)

United States v. Davis,
    336 F.3d 920 (9th Cir. 2003) . . . . . . . . . . . . . 8, 9

United States v. Diaz,
    303 F. Supp. 2d 84 (D. Conn. 2004) . . . . . . . . . . 15

United States v. Edmonds,
    103 F.3d 822 (9th Cir. 1996) . . . . . . . . . . . 16, 17

United States v. Fitzgerald,
    882 F.2d 397 (9th Cir. 1989) . . . . . . . . . . . . . 8

United States v. Giampa,
    904 F. Supp. 235 (D.N.J. 1995) . . . . . . . . . . . . 15

United States v. Giese,
    597 F.2d 1170 (9th Cir. 1979) . . . . . . . . . . . . 9

United States v. Jensen,
    93 F.3d 667 (1996) . . . . . . . . . . . . . . . . . . 10

United States v. LaMacchia,
    871 F. Supp. 535 (D. Mass. 1994) . . . . . . . . . 18, 19

United States v. Lench,
    806 F.2d 1443 (9th Cir. 1986) . . . . . . . . . . . . 14

United States v. Mann,
    517 F.2d 259 (5th Cir. 1975) . . . . . . . . . . . . . 10

United States v. Pfeaster,
    544 F.2d 353 (9th Cir. 1976) . . . . . . . . . . . . . 9

United States v. Ramirez,
    710 F.2d 535 (9th Cir. 1983) . . . . . . . . . . . . . 18

United States v. Sampson,
    371 U.S. 75 (1962) . . . . . . . . . . . . . . . . . . 14

United States v. Schmitt,
    2005 WL 2449627 (E.D. Wisc. Oct. 3, 2005) . . . . . . . 15

United States v. Shipsey,
    363 F.3d 962 (9th Cir. 2004) . . . . . . . . . . . 16, 17

United States v. Turner,
    400 F.3d 491 (7th Cir. 2005) . . . . . . . . . . . . . 14

iii

TABLE OF AUTHORITIES (cont'd.)

Description                                                    Page(s)

Yeargain v. United States,
    314 F.2d 881 (9th Cir. 1963) . . . . . . . . . . . . . . . 15

Wong Tai v. United States,
    273 U.S. 77 (1927) . . . . . . . . . . . . . . . . 10, 11

FEDERAL STATUTES

18 U.S.C. § 495 . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 1030 . . . . . . . . . . . . . . . . . 1, 11, 12

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . 18


FEDERAL RULES

Fed. R. Crim. P. 7 . . . . . . . . . . . . . . . . . . 8, 18

OTHER

S. Rep. 104-357, 104th Cong., 2nd Sess. 1996 . . . . . . . . 19

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

I

## INTRODUCTION

Defendant Lori Drew has been charged in the four count indictment with (1) conspiring to access protected computers without authorization in violation of 18 U.S.C. § 371 (Count One); and (2) accessing protected computers without authorization to obtain information to further a tortious act in violation of 18 U.S.C. § 1030(a)(2) (Counts Two through Four).  Trial in this matter has been scheduled for October 4, 2008.

On July 23, 2008, defendant filed a motion to dismiss the indictment for failure to state a claim.  Defendant contends the indictment should be dismissed because it contains insufficient factual allegations in support of the elements of the offense. Specifically, although defendant appears to concede that the indictment alleges each of the elements of the offense, she appears to contend that the indictment fails to allege sufficient facts to show that she intentionally accessed a computer without authorization or that her conduct was not in fact authorized. Relying on an out of district copyright case that has been superseded by statute, defendant also appears to contend that the indictment fails to allege a violation of the Computer Fraud and Abuse Act ("the CFAA") based on an assumption that the CFAA does not cover the conduct at issue.  Defendant's arguments are unavailing.

First, due process and Rule 7 of the Federal Rules of

1

1  Criminal Procedure require nothing more than a "plain, concise

2  and definite written statement of the essential facts

3  constituting the offense charged."  The indictment, which covers

4  10 pages and forty paragraphs and subparagraphs provides ample

5  factual detail, including particularized dates, specific overt

6  acts conducted in furtherance of the conspiracy, and numerous

7  allegations regarding the scheme and its manner and means.  It

8  therefore provides sufficient factual detail to, among other

9  things, plead double jeopardy.

10      Second, defendant's demand for precise allegations of how

11  the government will prove its case is improper.  Neither Rule 7

12  nor due process require the government to outline in detail how

13  it will present its case.  Were either authority to impose such a

14  requirement, even the simplest one day trials would require pages

15  of mind numbing factual detail.  But even if this circuit's

16  authority demanded factual detail, the indictment in its current

17  forms includes substantial factual allegations.

18      Finally, defendant's assumption regarding the limited scope

19  of the CFAA is misplaced.  Since its inception, the Act was

20  intended to serve as the principal statute to address computer-

21  related crimes and was designed to be flexible enough to address

22  changing circumstances.  Nor would dismissal be warranted based

23  on an out-of-district case addressing a copyright violation that

24  has been superseded by statute.

25

26

27

28                                     2

II

STATEMENT OF FACTS

A.   BACKGROUND ON MYSPACE.COM

MySpace is a social networking website; that is, MySpace is a website that focuses on building online communities of people who share interests and activities, or who are interested in exploring the interests and activities of others.  MySpace accounts are free.  There are two types of users of the website: visitors and members.  Visitors can navigate to the website and view certain content that is publically available.  Members have greater rights of access.  Not only can members view the publically available content, they also can view some content that is not available to nonmembers.  They also are permitted to create unique personal profiles online.  These profiles can include text, pictures, and audio files.  Members also can find and communicate with old and new friends using MySpace communication services, including email and instant messaging services.  Some content on MySpace is only available to MySpace members and only MySpace members have access to MySpace communication services.

Although MySpace membership is free, prospective members are required to agree to certain Terms of Service ("TOS") before they can become members.  Prospective members are "authorized" to use MySpace's services only if they agree to abide by all applicable laws and the TOS.  ("You are only authorized to use the Services . . .  if you agree to abide by all applicable laws and to this

3

Agreement"). The TOS also enumerate certain conduct that is not permitted on the website, is unauthorized, and can lead to termination of the member's account. Among other things, the rules prohibit:

    1.  "criminal or tortious activity, including child pornography, fraud, trafficking in obscene material, drug dealing, gambling, harassment, stalking, spamming, spimming, sending of viruses or other harmful files, copyright infringement, patent infringement or theft of trade secrets"

    2.  "using any information obtained from [MySpace services] in order to harass, abuse, or harm another person"

    3.  "soliciting personal information from anyone under 18"

    4.  "harass[ing] or advocat[ing] harassment of another person.

    5.  promot[ing] information that the member knows is false or misleading; and

    6.  using a photograph with out a person's consent.

The registration process and TOS also require prospective members to promise that their registration information is truthful and accurate.

B.   DEFENDANT EMBARKS ON SCHEME TO OBTAIN INFORMATION ABOUT M.T.M.

    For several years, defendant's family, the Drews, and another local neighborhood family, the Meiers, were friendly. Each family had a daughter the same age who was friendly with the other and attended school together. Over time, however, the two girls drifted apart and, in 2005, the Meiers decided to transfer their daughter, a thirteen year old girl with the initials

4

1  M.T.M., from the local public school to a local Catholic school.
2  Cristina Meier, M.T.M.'s mother confided in defendant that she
3  was concerned about M.T.M.'s mental health and was particularly
4  vulnerable at that time.

5       Over the summer of 2006, defendant and her family were
6  concerned that M.T.M. was spreading malicious rumors about
7  defendant's daughter.  Defendant discussed the matter with her
8  daughter and her eighteen year old employee, Ashley Grills, and
9  the three conceived of a scheme where they would pretend to be an
10 attractive male teenager on Myspace.com and approach M.T.M.
11 through MySpace using that false identity to obtain M.T.M.'s
12 confidence.  Once they had gained M.T.M.'s confidence, the co-
13 conspirators could find out what M.T.M. was saying on MySpace,
14 including what M.T.M. was saying about defendant's daughter.
15 Grills pointed out that there was a risk they would get in
16 trouble if the scheme were uncovered; however, defendant assured
17 Grills that they would not and, in any event, many people created
18 fake identities on the Internet.

19 C.  DEFENDANT AND HER CO-CONSPIRATORS USE THE FAKE MYSPACE
20      ACCOUNT

21      Committed to the scheme, on September 18, 2008, defendant
22 and her co-schemers created a MySpace profile under the fake name
23 "Josh Evans."  "Evans" was supposedly a teenager who was new to
24 the area and was home schooled.  "Evans" was supposedly lonely
25 because he did not know anyone in the area and "his" father had
26 abandoned the family.  The co-schemers also posted a photograph
27
28                                    5

of an attractive boy on the profile to further the fraud.[1]  On

that same date, defendant and her co-schemers contacted M.T.M.

through the MySpace communication services.[2]  Smitten with the

attractive "boy's" invitation to communicate, M.T.M. agreed to

communicate with "him."

Although the initial communications were innocent enough,

within days, defendant encouraged her co-schemers to flirt with

M.T.M.  Defendant also discussed using the information obtained

during the scheme to humiliate M.T.M. in the real world.

Specifically, when it became clear that M.T.M. was attracted to

"Josh Evans," defendant proposed that the co-conspirators lure

M.T.M. to a mall where they would reveal that there was no "Josh

Evans" and taunt M.T.M. with the contents of her MySpace page and

information learned during the scheme.

On October 15, 2006, another girl in the neighborhood

obtained the username and password for the "Josh Evans" account

and sent M.T.M. a message suggesting that "Evans" did not want to

be friends with M.T.M. anymore because M.T.M. was not nice to her

friends.  When the co-schemers resumed the on-line conversation

the following day, the dispute escalated until Grills told M.T.M.

that the world would be a better place without M.T.M. in it.

---

[1] The co-conspirators did not ask anyone's permission before
posting the photograph.

[2] Because M.T.M. registered for a juvenile account, that is,
an account for members under the age of sixteen, her account was
designated "private."  As a result, the content on her page was
not available to the public at large and could only be viewed if
M.T.M. agreed to let the member contact her.

1  Distraught, M.T.M. hung herself in her bedroom closet.

2      When emergency crews responded to the Meier residence,
3  defendant instructed her co-conspirators to find out what had
4  happened.  Upon learning that M.T.M. had attempted to commit
5  suicide, defendant and her husband directed the co-schemers to
6  delete the MySpace account.

7      Later that evening, defendant called the neighborhood girl
8  who had sent M.T.M. the message on October 15.  Defendant
9  instructed her not to "keep her mouth shut," to "stay off the
10  MySpace," and to avoid accessing the Josh Evans account.  Sensing
11  something was amiss because defendant never called her daughter
12  directly, the mother of the neighborhood girl, Michelle Mulford,
13  asked her daughter what had happened.  Mulford subsequently
14  confronted defendant.  Defendant told Mulford that she
15  (defendant), her daughter, and Grills had created the account to
16  play a prank on M.T.M. and that she (defendant) caused the
17  account to be deleted.  In subsequent phone conversation,
18  defendant tried to disclaim responsibility, telling Mulford that
19  Meier previously tried to commit suicide.

20                              III

21                           ARGUMENT

22  A.   THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BECAUSE
         THE INDICTMENT ADEQUATELY STATES A CRIME UNDER THE COMPUTER
23       FRAUD AND ABUSE ACT

24      Defendant first contends this Court should dismiss the
25  indictment because she claims it fails to allege certain facts
26  sufficient to support the elements of the offense.  Defendant
27

28                              7

does not suggest that the indictment fails to allege any element of the offense -- simply that the government has not alleged how it will prove those various elements. As set forth below, both the Supreme Court and the Ninth Circuit have expressly held that indictments need not set forth the government's theory of the case nor lay out the evidence in support of the allegations of the indictment. Accordingly, defendant's motion should be denied.

1. <u>Because the Indictment Tracks the Words of the Applicable Statutes, Unambiguously Sets Forth All the Elements Necessary to Constitute the Crimes Alleged, and Allows Defendant to Plead Double Jeopardy, It Is Sufficient</u>

Rule 7 of the Federal Rules of Criminal Procedure provides that an indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Supreme Court and Ninth Circuit have therefore explained that an indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable her to plead double jeopardy. <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>see also Russell v. United States</u>, 369 U.S. 749, 763-64 (1962). For example, in <u>United States v. Davis</u>, 336 F.3d 920 (9th Cir. 2003), the Ninth Circuit held:

> In cases where the indictment "tracks the words of the statue charging the offense," the indictment will be held sufficient "so long as the words unambiguously set forth all elements necessary to constitute the offense."

<u>Id.</u> at 922 (citing <u>United States v. Fitzgerald</u>, 882 F.2d 397, 399

8

(9th Cir. 1989)).[3]   The Ninth Circuit has even repeatedly
rejected attempts to dismiss indictments for failing to state
claims even when they did not explicitly state all of the
elements of the offense at issue.   See, e.g., Davis, 336 F.3d at
923 (affirming district court's denial of motion to dismiss even
though there was no dispute that the indictment did not contain a
specific verbal elaboration of the criminal intent"); United
States v. Buckley, 689 F.2d 893, 898 (9th Cir. 1982) (indictment
sufficient even though it did not allege falsity of report);
Giese, 597 F.2d at 1178 (indictment sufficient even though
conspiracy embraced non-federal offenses); Stein v. United
States, 313 F.2d 518 (9th Cir. 1962) (indictment sufficient even
though it failed to allege defendant knew heroin had been
illegally imported even though such knowledge was necessary
element); Danielson v. United States, 321 F.2d 441 (9th Cir.
1963) (indictment sufficient despite mingling elements of forgery
and uttering under 18 U.S.C. § 495); United States v. Pfeaster,
544 F.2d 353, 363 (9th Cir. 1976) (conspiracy indictment
sufficient even though it did not allege all the elements of
underlying substantive offense).

    Because Rule 7 and due process require only a short and
plain statement of the crime that alleges each of the elements of

---

    [3]Indictments alleging criminal conspiracies are to be read
in an even more liberal fashion:  "[a]n indictment charging a
conspiracy under 18 U.S.C. § 371 satisfies these requirements if
it alleges the three elements which are the gist of the offense:
'the agreement, the unlawful object towards which the agreement
is directed, and an overt act in furtherance of the conspiracy.'"
United States v. Giese, 597 F.2d 1170, 1177-1178 (9th Cir. 1979).

1   the crime charged, the Ninth Circuit has emphasized that "[t]he

2   government need not allege its theory of the case or supporting

3   evidence, but only the essential facts necessary to apprise a

4   defendant of the crime charged." Buckley, 689 F.2d at 897

5   (internal citation and quotation marks omitted). As a

6   consequence, "[a] defendant may not properly challenge an

7   indictment, sufficient on its face, on the ground that the

8   allegations are not supported by adequate evidence." United

9   States v. Clifford, 93 F.3d 667, 669 (9th Cir. 1996) (quoting

10  United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975)).

11      Here, the indictment alleges sufficient facts to withstand a

12  motion to dismiss. Specifically, the ten page indictment alleges

13  each of the elements of the charged offenses and gives the

14  defendant sufficient notice of the charges. Buckley, 689 F.2d at

15  899 n.5 ("Although Fed. R. Crim P. 7(c) requires that the

16  indictment be a 'plain, concise and definite written statement of

17  the essential facts constituting the offense charged,' the courts

18  have construed this language to require little more than that the

19  indictment give the defendants sufficient notice of the crime")

20  (citing cases); see also Wong Tai v. United States, 273 U.S. 77,

21  81 (1927) (indictment sufficient where it alleged time, place,

22  co-schemer, specified offenses, and overt acts). First, Count

23  One alleges an unlawful agreement, namely, that defendant

24  "conspired and agreed with [others] intentionally to access a

25  computer used in interstate and foreign commerce without

26  authorization and in excess of authorized access and, by means of

27

28                              10

an interstate communication, obtain information from that computer to further a tortious act, namely, intentional infliction of emotional distress, in violation of 18 U.S.C. §§ 1030(a)(2)(c), (c)(2)(B)(2)." It likewise alleges several means by which that unlawful objective was to be accomplished. Specifically, the indictment alleges that defendant and her co-schemers (1) fraudulently created an account on MySpace, (2) used that account to obtain information about M.T.M., (3) used that information to torment, harass, humiliate, and embarrass M.T.M., and (4) covered up the scheme by destroying the MySpace account. The indictment also alleged twelve distinct overt acts undertaken by defendant and her co-schemers in furtherance of the conspiracy.  The factual allegations are more than sufficient to satisfy the minimal requirements of Rule 7 and due process. Wong Tai, 273 U.S. at 81 ("In charging . . . a conspiracy 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit is all that is necessary.").

Likewise, Counts Two through Four, which charge violations of 18 U.S.C. § 1030(a)(2) are adequately pled.  Each of those counts allege each of the necessary elements.  The indictment explicitly alleges that defendant intentionally accessed a computer without authorization and exceeded authorized access to a protected computer (Indictment, ¶ 18); alleges facts showing that her access of that computer involved an interstate or foreign communication (Indictment, ¶¶ 7-8, 18); that by accessing

11

1  the computer without authorization and exceeding authorized

2  access, defendant obtained information from a computer used in

3  interstate or foreign commerce or communication (Indictment,

4  ¶ 8); and that the information was used to further a tortious

5  act, (Indictment, ¶ 18).  The indictment also alleges dates when

6  the unauthorized access to protected computers occurred, as well

7  as venue allegations.[4]  (Id.)

8      Counts Two through Four also incorporate by reference five

9  pages of detailed allegations setting forth the manner in which

10 the conduct was unauthorized and the manner in which the conduct

11 involved an interstate nexus.  Counts Two through Four also

12 incorporate by reference the factual allegations contained in the

13 overt acts of Count One.  In doing so, Counts Two though Four

14 describe the scheme in the same way as Count One and the

15 multitude of ways in which the activities of the co-conspirators

16 were unauthorized. (Indictment, ¶¶ 12(a)-(f)).[5]

17

18    [4] Although the undersigned is unaware of any published
    criminal case addressing the sufficiency of an indictment
19  alleging a violation of 18 U.S.C. 1030, challenges in civil cases
    under Rule 12(b)(6) are routinely rejected under similar
20  circumstances.  See, e.g., Dudick v. Vaccarro, 2007 WL 1847435 at
    *7(M.D. Pa. Jun. 25, 2007) (rejecting argument that allegations
21  were too conclusory by tracking statutory language); Hewlett-
    Packard Co. v Byd:Sign, Inc, 2007 WL 275476 (E.D. Tex. Jan. 25,
22  2007) (rejecting motion to dismiss); P.C. of Yonkers, Inc. v.
    Celebrations! The Party and Seasonal Superstore, 2007 WL 708978,
23  at *7 (N.D.N.J. Mar. 5, 2007) (holding that the plaintiffs
    adequately alleged a violation of the CFAA when their complaint
24  exactly mirrored the statutory language).

25    [5] In this regard, the indictment provides greater detail
    than the indictments in Jenson, cited by defendant and which the
26  Ninth Circuit found sufficient notwithstanding the limited
    allegations regarding venue.  93 F.3d at 669.  There, the Ninth
27  Circuit held the indictments were sufficient because they alleged

28                              12

1   Indeed, the factual detail, and the indictment as a whole,
2   place defendant on notice of the theory of the government's case
3   by describing how defendant and her co-conspirators carried out a
4   scheme to humiliate a little girl by posing as a boy, flirting
5   with her so that she would become attracted to "him," and gaining
6   information to humiliate her.  As the indictment explains, the
7   account was created in September 2006 and was designed as a means
8   to obtain information that would be used to "torment, harass,
9   humiliate, and embarrass" a juvenile MySpace member.  The scheme
10  continued through the end of September and into October, during
11  which time the co-conspirators flirted with M.T.M., told M.T.M.
12  she was "sexi," and obtained personal information from M.T.M.  By
13  October, M.T.M. was hooked such that she told the co-
14  conspirators: "aww sexi josh ur so sweet if u moved back u could
15  see me up close and personal lol" and "Heyy babe!! Call me
16  sometime 636 [xxxxxxx]!  It's the cell.  I love you so much."
17  (Indictment, ¶¶ 9-10).[6]  Consequently, although the indictment
18

19  that the last known residences of defendants were in the Western
20  District of Washington – without more.  Id.  No additional detail
    regarding how long they lived there or where in the district they
21  resided was required.  In much the same way, how defendant
    learned about the TOS and when she learned about them need not be
22  alleged so long as it is alleged that she intentionally accessed
    the computers without authorization or in excess of her
23  authorization.

24  [6]Contrary to defendant's suggestion, the indictment also
    describes some of the facts that show defendant knew her conduct
25  violated the rules established by MySpace and intended to break
    those rules.  For example, the indictment alleges how defendant
26  and her co-conspirators sought to cover up the scheme.  United
    States v. Turner, 400 F.3d 491, 496-97 (7th Cir. 2005); see also
27  United States v. Lench, 806 F.2d 1443 (9th Cir. 1986).  The
    indictment describes how after learning of M.T.M.'s death,

28                                  13

1  need not include that information, defendant has been provided

2  with a wealth of factual information regarding the government's

3  theory of the case.

2.    Defendant's Demand for Additional Factual Detail
       Is Improper

4

5  Although defendant acknowledges that the government alleges

6  the elements of the offense, she nonetheless faults the

7  indictment for failing to identify the proof that the government

8  intends to adduce at trial regarding her scienter.  (Def's Mot. 6

9  ("Where the indictment fails is the total lack of alleged facts

10 on 'intentionally,' that if proven beyond a reasonable doubt

11 would cause a conviction under § 1030").)  This is not what is

12 required by Rule 7 or due process, however.  Brandon v. United

13 States, 190 F.2d 175 (9th Cir. 1951)  "The indictment stage of

14 the proceedings is not the appropriate time to require the

15 Government to present its proof."  Buckley, 689 F.2d at 900

16 (relying on United States v. Sampson, 371 U.S. 75, 78-79 (1962).)

17 Defendant's motion is, therefore, in effect a motion for summary

18 judgment suggesting that the government cannot adduce evidence to

19 create a triable issue of fact on one or more elements.[7]  See

20

21 defendant directed her co-schemers to delete the Josh Evans
   MySpace Account to destroy any evidence of the scheme.
22 (Indictment, ¶ 16).  The indictment also describes how defendant
   instructed one witness to "keep her mouth shut" and to avoid
23 accessing the Josh Evans MySpace Account. (Id.)

24
       [7] Nor would defendant's motion be properly styled as a
25 motion for a bill of particulars under Rule 7(f).  A defendant is
   not entitled to know all the evidence the government intends to
26 introduce at trial.  Cook v. United States, 354 F.2d 529, 531
   (9th Cir. 1965) (citing United States v. Yeargain, 314 F.2d 881,
27 882 (9th Cir. 1963)); see also United States v. Giampa, 904 F.

28                                    14

1  Jensen, 93 F.3d at 669 ("There is no summary judgment procedure

2  in criminal cases.  Nor do the rules provide for a pre-trial

3  determination of the evidence") (citing United States v. Critzer,

4  951 F.2d 306, 307 (11th Cir. 1992)).[8]

5       Defendant's reliance on United States v. Cecil, 608 F.2d

6  1294 (9th Cir. 1979), is likewise unavailing.  In Cecil, the

7  Ninth Circuit reversed defendant's conviction after concluding

8  that the six paragraph indictment in that case was insufficient.

9  Id. at 1295.  Specifically, the Ninth Circuit faulted the

10 government for failing to allege any facts or circumstances

11 pertaining to the conspiracy or any overt acts done in

12 furtherance thereto.  Id.  "Most importantly," however, the

13 indictment failed to place the conspiracies within any time frame

14 as the indictment was "open ended" both in terms of when it

15 allegedly started and when it allegedly ended.  Id.  By

16

17 Supp. 235, 279 (D.N.J. 1995) ("Although Rule 7(f) is to be
   construed liberally, it does not permit a defendant to receive

18 wholesale discovery of the Government's evidence.").
   "Ultimately, the test for validity of an indictment is not

19 whether it could have been framed in a more satisfactory manner,
   but whether it conforms to minimal constitutional standards."

20 United States v. Schmitt, 2005 WL 2449627 at *8 (E.D. Wisc. Oct.
   3, 2005).  "Indeed, because a Bill of Particulars serves to

21 restrict how the government may present its case at trial, the
   question is not whether the information sought would be

22 beneficial to the defendant, but whether it is necessary for his
   defense."  United States v. Diaz, 303 F. Supp.2d 84, 89 (D. Conn.

23 2004).

24      [8] But even if the indictment did not explicitly plead that
   defendant intentionally accessed protected computers without

25 authorization, such a deficiency would not have been fatal.  "An
   indictment should be: (1) read as a whole; (2) read to include

26 facts which are necessarily implied; and (3) construed according
   to common sense."  Buckley, 689 F.2 at 899 (reading into

27 indictment allegations in accordance with common sense).

28                              15

1  implication, the defendant apparently would not have been able to

2  plead double jeopardy in a subsequent case.

3      By contrast here, the four count indictment, which covered

4  ten pages and approximately forty paragraphs and subparagraphs,

5  contained precisely the detail that was found lacking by the

6  Ninth Circuit in <u>Cecil</u>.  In contrast to the conspiracy

7  allegations in <u>Cecil</u>, which were open ended in terms of time

8  frame, Count One here alleges a very definite time frame, namely,

9  a closed ended conspiracy beginning in or about September 2006

10  and ending on or about October 16, 2007.  (Indictment, ¶ 14.)

11  Moreover, whereas the indictment in <u>Cecil</u> lacked any specific

12  factual allegations or overt acts, the indictment here alleges

13  four distinct ways in which defendant and her co-schemers

14  furthered the object of the conspiracy, (<u>id.</u> at ¶ 15), and twelve

15  distinct overt acts conducted in furtherance of the conspiracy.

16  Counts Two through Four likewise allege conduct on or about

17  specific dates and incorporate by reference the detailed

18  allegations contained previously.[9]  Accordingly, while the

19

20      [9]Nor are <u>United States v. Edmonds</u>, 103 F.3d 822 (9th Cir.
1996), and <u>United States v. Shipsey</u>, 363 F.3d 962 (9th Cir. 2004)

21  cited by defendant, any more availing.  <u>Edmonds</u> did not address a
pre-trial challenge to the sufficiency of the pleadings; rather,

22  it dealt with a post-trial challenge to the sufficiency of the
evidence.  103 F.3d at 824-25.  Likewise, <u>Shipsey</u> did not address

23  the sufficiency of an indictment, addressing instead alleged
instructional errors and alleged Speedy Trial violation.  In

24  passing, the Ninth Circuit acknowledged the district court
dismissed five counts because the indictment failed to allege an

25  element of the offense.  363 F.3d at 965 n.1.  Here, however,
defendant does not allege that the indictment fails to allege an

26  element (defendant appears to concede the elements were
adequately pled) – only that the government did not plead enough

27  facts.  <u>Shipsey</u> did not reach that issue.

28                              16

1   indictment in <u>Cecil</u> was vague and bare bones, particularly on

2   dates, the indictment here has plenty of factual detail and is

3   precise as to the time frame at issue.[10]

4        The implication of defendant's argument would be that

5   indictments would be pled with crushing, mind-numbing detail.

6   Indictments charging defendants with being felons in possession

7   of firearms would be forced to include excruciating detail

8   regarding the circumstances surrounding a defendant's

9   constructive possession of firearms.  Indictments charging

10  defendants with possession of controlled substances with intent

11  to distribute could very well cover several pages if the

12  government were required to allege the other indicia of drug

13  dealing in defendants' possession, the factors that lead experts

14  to conclude the amounts were consistent with distribution, the

15  _____

16       [10] Defendant's suggestion that the government must allege
    (and presumably prove) "when" or "how" she viewed the terms of
17  service is misplaced.  The government need only show she acted
    with the requisite scienter and can rely on a host of factors and
18  evidence.  See NINTH CIRCUIT MODEL JURY INSTRUCTIONS, 5.6 (2003) ("The
    government is not required to prove that a defendant knew that
19  his acts were unlawful.  You may consider evidence of the
    defendant's words, acts, or omissions, along with all the other
20  evidence, in deciding whether the defendant acted knowingly."); 1
    O'Malley, Grenig & Lee, FEDERAL JURY PRACTICE INSTRUCTIONS, §17.07 (5th
21  ed.) ("The intent of a person or the knowledge that a person
    possesses at any given time may not ordinarily be proved directly
22  because there is no way of directly scrutinizing the workings of
    the human mind. In determining the issue of what a person knew or
23  what a person intended at a particular time, you may consider any
    statements made or acts [done] [omitted] by that person and all
24  other facts and circumstances received in evidence which may aid
    in your determination of that person's knowledge or intent. You
25  may infer, but you are certainly not required to infer, that a
    person intends the natural and probable consequences of acts
26  knowingly done or knowingly omitted. It is entirely up to you,
    however, to decide what facts to find from the evidence received
27  during this trial.").

28                                 17

1  absence of drug using paraphernalia, transcripts of recorded

2  conversations, or other such evidence.  Such factual detail would

3  then likely invite motions to strike.  Fed. R. Crim. P. 7(f);

4  United States v. Ramirez, 710 F.2d 535, 544-45 (9th Cir. 1983).

5  Defendant's novel pleading rules would therefore be inconsistent

6  with Ninth Circuit authority and highly impractical.

7  B.    UNITED STATES V. LAMACCHIA IS INAPT

8       Finally, defendant contends that this Court should dismiss

9  the indictment under the rationale of United States v. LaMacchia,

10  871 F. Supp. 535 (D. Mass. 1994), an out of district copyright

11  case.  In LaMacchia, the district court dismissed an indictment

12  charging a defendant with wire fraud in connection with a scheme

13  to facilitate the wide scale copying of copyrighted material

14  without the consent of the rights holders.  Id. at 536, 545.

15  Although the crime sounded in copyright, the defendant had been

16  charged with wire fraud presumably because, at the time, the

17  copyright statute only criminalized conduct pursued for personal

18  financial benefit and defendant had not sought to benefit himself

19  financially.  Id. at 537.  The district court reasoned that the

20  unique characteristics of copyright law rendered application of

21  18 U.S.C. § 1343 improper.  LaMacchia, 871 F. Supp. at 542, 545.

22  The district court observed that Congress had enacted a series of

23  stepped responses to copyright violations and thereby concluded

24  that the use of the wire fraud statute threatened to upset that

25

26

27

28                                    18

1 carefully regimented regime.[11]

2    Defendant would have this Court believe that just as in

3 LaMacchia, where the district court dismissed the indictment due

4 to an overly expansive reading of the wire fraud statute, this

5 Court should likewise dismiss the indictment due to a different

6 view of the CFAA than she is prepared to accept.  The analogy,

7 however, is inapt.  In LaMacchia, the district court was

8 concerned with upsetting a carefully stepped civil and criminal

9 regime involving what it believed was a unique intellectual

10 property right.  LaMacchia, 871 F. Supp. at 543.  By contrast

11 here, application of the CFAA would not upset a carefully

12 conceived regulatory regime.  Moreover, in enacting the Act,

13 Congress explicitly stated its intent that it be used to address

14 a whole host of cyber related crimes.  S. Rep. 104-357, 104th

15 Cong., 2nd Sess. 1996, at *5 ("the Computer Fraud and Abuse

16 statute facilitates addressing in a single statute the problem of

17 computer crime, rather than identifying and amending every

18 potentially applicable statute affected by advances in computer

19 technology").[12]  Accordingly, LaMacchia, is inapt.

20    _____

21    [11] The district court even observed at one point that the
intellectual property rights at issue were different from other
22 property rights, presumably given the highly regimented regime.
Id. at 543.

23

24    [12] Defendant also suggests that the fact that the statute has
not previously been used to address cyberbullying shows that the
statute is too vague.  As explained in the government's
25 opposition to defendant's motion to dismiss for vagueness,
defendant's argument is fallacious.  See Pennsylvania Dept. of
26 Corrections v. Yeskey, 524 U.S. 206, 212 (1998).  Although
Section 1030 may have been in existence for some time,
27 cyberbullying is a relatively recent phenomenon, as are social

28                           19

IV.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim should be denied.

Dated: August 12, 2008

                    Respectfully submitted,

                    THOMAS P. O'BRIEN
                    United States Attorney

                    CHRISTINE C. EWELL
                    Assistant United States Attorney
                    Chief, Criminal Division

                    _____
                    MARK C. KRAUSE
                    Assistant United States Attorney

                         Attorneys for Plaintiff
                         United States of America

---

networking websites.  Consequently, it is not surprising that no cyberbullying cases were brought when the Act was enacted in 1984.  But even if the crime at issue were not new, courts have recognized that the government's failure to use or enforce a statute does not result in its modification or repeal.  District of Columbia v. John R. Thompson Co., 346 U.S. 100, 113-14 (1953).