THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (SBN 198142)
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual
Property Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3493
    Facsimile: (213) 894-8601
    Email: mark.krause@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR NO. 08-582-GW |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VAGUENESS |
| v. | ) | |
| LORI DREW, | ) | Hearing Date: September 4, 2008 |
| Defendant. | ) | Hearing Time: 8:30 a.m. |
| | ) | Trial Date: October 7, 2008 |
| | ) | Trial Time: 8:00 a.m. |
| | ) | Place: Courtroom of the |
| | ) | Hon. George H. Wu |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Mark C. Krause, hereby files this opposition to defendant's motion to dismiss for vagueness.

\\\

\\\

\\\

1    This opposition is based on the attached memorandum of

2  points and authorities, the files and records in this case, and

3  whatever evidence or argument this Court may consider.

4  Dated: August 12, 2008

5                            Respectfully submitted,

6                            THOMAS P. O'BRIEN
                             United States Attorney
7
                             CHRISTINE C. EWELL
8                            Assistant United States Attorney
                             Chief, Criminal Division
9

10  ───────────────────────────────────
                             MARK C. KRAUSE
11                           Assistant United States Attorneys

12                               Attorneys for Plaintiff
                                 United States of America
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  2

# TABLE OF CONTENTS

Description                                                          Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . .   ii

I    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . .    1

II   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . .    3

     A.   BACKGROUND ON MYSPACE.COM . . . . . . . . . . . . . .    3

     B.   DEFENDANT EMBARKS ON SCHEME TO OBTAIN
          INFORMATION ABOUT M.T.M. . . . . . . . . . . . . . . .   4

     C.   DEFENDANT AND HER CO-CONSPIRATORS USE
          THE FAKE MYSPACE ACCOUNT . . . . . . . . . . . . . . .   5

III  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .    8

     A.   THE COURT SHOULD DENY DEFENDANT'S MOTION
          TO DISMISS BECAUSE THE INDICTMENT
          ADEQUATELY STATES A CRIME UNDER THE
          COMPUTER FRAUD AND ABUSE ACT . . . . . . . . . . . . .   7

     B.   THE COURT SHOULD DENY DEFENDANT'S MOTION
          BECAUSE SECTION 1030 IS NOT
          UNCONSTITUTIONALLY VAGUE . . . . . . . . . . . . . . .   11

          1.   The Term "Access" Is
               Sufficiently Particular . . . . . . . . . . . .    12

          2.   The Term "Unauthorized" Is
               Sufficiently Particular . . . . . . . . . . . .    15

          3.   The CFAA Has Been Crafted with
               Ample Clarity to Prevent
               Arbitrary Enforcement . . . . . . . . . . . . .    17

               a.   The Theory of Prosecution Does
                    Not Threaten to Criminalize
                    A Wide Scope of Conduct . . . . . . . . . .   18

               b.   The Unusual Nature of the Case
                    Does Not Suggest the CFAA Cannot
                    Be Applied in this Fashion . . . . . . . .    20

          4.   There Is No Due Process Violation
               Due to Alleged Lack of Notice . . . . . . . . .    22

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .    24

i

# TABLE OF AUTHORITIES

Description                                                        Page(s)

## FEDERAL CASES

Am Online, Inc. v. National Health Care Discount, Inc.,
    121 F. Supp. 2d 1255 (N.D. Iowa 2000) . . . . . . . . . 13

America Online, Inc. v. LCGM, Inc.,
    46 F. Supp. 2d 444 (E.D. Va. 1998) . . . . . . . . . . 15

Anderson v. Morrow,
    371 F.3d 1027 (9th Cir. 2004) . . . . . . . . . . 20, 23

Apprendi v. New Jersey,
    530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . 23

Bethea v. Robert J. Adams & Associates,
    352 F.3d 1152 (7th Cir. 2003) . . . . . . . . . . . . 17

Boyce Motor Lines, Inc. v. United States,
    342 U.S. 337 (1952) . . . . . . . . . . . . . . . . . 12

Brandon v. United States,
    190 F.2d 175 (9th Cir. 1951) . . . . . . . . . . . . 10

EF Cultural Travel BV v. Explorica, Inc.,
    274 F.3d 577 (1st Cir. 2001) . . . . . . . . . . . . 15

EF Cultural Travel v. Zefer Corp.,
    318 F.3d 58 (1st Cir. 2003) . . . . . . . . . . . . . 15

Gammoh v. City of La Habra,
    395 F.3d 1114 (9th Cir. 2005) . . . . . . . 11, 12, 14

George S. May Int'l. Co. v. Hostetler,
    2004 WL 1197395 (N.D. Ill. May 28, 2004) . . . . . . 15

Hotmail Corp. v. Van$ Money Pie, Inc.,
    1998 WL 388389 (N.D. Cal. Apr. 16, 1998) . . . . . . 16

International Airport Centers LLC v. Citrin,
    440 F.3d 418 (7th Cir. 2006) . . . . . . . . . . . . 15

International Association of Machinists and
Aerospace Workers v. Werner-Masuda,
    390 F. Supp. 2d 479 (D.Md 2005) . . . . . . . . . . . 16

Kev, Inc. v. Kitsap County,
    793 F.2d 1053 (9th Cir. 1986) . . . . . . . . . . 12, 14

ii

**TABLE OF AUTHORITIES (cont'd.)**

Description                                                        Page(s)

Kolender v. Lawson,
    461 U.S. 352 (1983) . . . . . . . . . . . . . . . . . . 11

Modis v. Bardelli,
    531 F. Supp. 2d 314 (D. Conn. 2008) . . . . . . . . . 15

Pennsylvania Department of Corrections v. Yeskey,
    524 U.S. 206 (1998) . . . . . . . . . . . . . . . . . 20

Role Models America, Inc. v. Jones,
    305 F. Supp. 2d 564 (D. Md 2004) . . . . . . . . . . 13

Sedima, S.P.L.R. v. Imrex Co.,
    473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . 20

Shurgard Storage Centers, Inc. v. Safeguard
Self Storage, Inc.,
    119 F. Supp. 2d 1121 (W.D. Wash. 2000) . . . . . . . 15

Southwest Airlines Co. v. Boardfirst LLC,
    2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) . . . . . 13

Ticketmaster LLC v. RMG Tech., Inc.,
    507 F. Supp. 2d 1096 (C.D. Cal. 2007) . . . . . . . . 15

Hewlett-Packard Co. v. Byd:Sign, Inc.,
    2007 WL 275476 (E.D. Tex. Jan. 25, 2007) . . . . . . 15

United States v. Balint,
    201 F.3d 928 (7th Cir. 2000) . . . . . . . . . . . . 21

United States v. Buckley,
    689 F.2d 897 (9th Cir. 1982) . . . . . . . . . . . 8, 11

United States v. Davis,
    36 F.3d 1424 (9th Cir. 1994) . . . . . . . . . . 14, 16

United States v. Fernandez,
    1993 WL 88197 (S.D.N.Y. Mar. 25, 1993) . . . . . . . 11

United States v. Fitzgerald,
    882 F.2d 397 (9th Cir. 1989) . . . . . . . . . . . . 8

United States v. Mitra,
    405 F.3d 492 (7th Cir. 2005) . . . . . . . . . . 21, 22

United States v. Panfil,
    338 F.3d 1299 (11th Cir. 2003) . . . . . . . . . . . 12

iii

**TABLE OF AUTHORITIES (cont'd.)**

Description                                                    Page(s)

United States v. Phillips,
    477 F.3d 215 (5th Cir. 2007) . . . . . . . . . . 13, 14, 15

United States v. Saban,
    92 F.3d 865 (9th Cir. 1996) . . . . . . . . . . . . . 18

United States v. Schmitt,
    2005 WL 2449627 (E.D. Wisc. Oct. 3, 2005) . . . . . . . . 8

United States v. Washam,
    312 F.3d 926 (8th Cir. 2002) . . . . . . . . . . . . 13

United States v. Wheeler,
    972 F.2d 927 (8th Cir. 1992) . . . . . . . . . . . 14, 16

Village of Hoffman Estates v. Flipside,
Hoffman Estates, Inc.,
    455 U.S. 489 (1982) . . . . . . . . . . . . . . . 13, 17

Wong Tai v. United States,
    273 U.S. 77 (1927) . . . . . . . . . . . . . . . . 9

**FEDERAL STATUTES**

18 U.S.C. § 1030 . . . . . . . . . . . . . . . . . . . passim

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL RULES**

Fed. R. Crim. P. 7(c)(1) . . . . . . . . . . . . . . . 8

**OTHER AUTHORITIES**

S. Rep. 104-357, 104th Cong., 2nd Sess. 1996, 5 . . . . . . 20

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

I

INTRODUCTION

Defendant Lori Drew has been charged in the four count indictment with (1) conspiracy to access protected computers without authorization in violation of 18 U.S.C. § 371; and (2) unauthorized access to a protected computer to obtain information to further a tortious act in violation of 18 U.S.C. § 1030.  Trial in this matter has been scheduled for October 4, 2008.

On July 23, 2008, defendant filed a motion to dismiss the indictment because defendant asserts it is too vague.  Defendant contends first that the indictment fails to allege that a crime has been committed.  Although defendant appears to concede that the indictment alleges the elements of a violation of 18 U.S.C. § 1030(a)(2), defendant appears to claim that the indictment fails to allege enough facts to support the elements of that offense.  Defendant next contends that the statute itself is too vague because it does not define "accessing" or "unauthorized." Defendant also contends the charges in this case have been brought arbitrarily and in a discriminatory fashion because the Computer Fraud and Abuse Act ("CFAA") has never previously been applied in this fashion.  Finally, defendant contends the application of the CFAA to this case violates due process due to a lack of notice.  Defendant's arguments are unavailing.

First, as explained in greater detail in the government's

1

1  opposition to defendant's motion to dismiss for failure to state

2  a claim, the indictment offers sufficient factual detail to

3  withstand a motion to dismiss.  As defendant must concede, the

4  indictment alleges each of the elements of the two crimes charged

5  and provides defendant with sufficient notice so that she can

6  plead double jeopardy in a subsequent prosecution.  The

7  indictment, in fact, offers a wealth of additional information

8  such that it reveals the government's theory of prosecution --

9  certainly far more than is required by Ninth Circuit authority.

10      Second, defendant's facial attack on the statute is

11  misplaced.  Contrary to defendant's suggestion, the terms

12  "access" and "unauthorized" are not so imprecise that people of

13  common intelligence must guess at their meaning.  Both can -- and

14  have been -- applied in a common sense fashion such that the

15  statute itself places individuals on notice of prohibited conduct

16  and is sufficiently definite to protect against arbitrary

17  enforcement.

18      Third, defendant fails to show the CFAA has been enforced

19  arbitrarily.  Cyberbullying is a relatively new phenomenon, as is

20  social networking.  It is, therefore, not surprising that there

21  have been relatively few prosecutions in this area.  Nor is it

22  surprising that the CFAA has been applied in this fashion, as

23  Congress specifically envisioned that statute as a tool to

24  address all manner of cyber crimes.

25      Finally, the statute does not threaten to criminalize

26  widespread conduct.  Because the government must show that

27

28                                    2

1 defendant acted with the requisite criminal scienter, there is no

2 risk of criminalizing innocent, let alone negligent conduct.

3                                    II

4                          STATEMENT OF FACTS

5 A.    BACKGROUND ON MYSPACE.COM

6        MySpace is a social networking website; that is, MySpace is

7 a website that focuses on building online communities of people

8 who share interests and activities, or who are interested in

9 exploring the interests and activities of others.  MySpace

10 accounts are free.  There are two types of users of the website:

11 visitors and members.  Visitors can navigate to the website and

12 view certain content that is publically available.  Members have

13 greater rights of access.  Not only can members view the

14 publically available content, they also can view some content

15 that is not available to nonmembers.  They also are permitted to

16 create unique personal profiles online.  These profiles can

17 include text, pictures, and audio files.  Members also can find

18 and communicate with old and new friends using MySpace

19 communication services, including email and instant messaging

20 services.  Some content on MySpace is only available to MySpace

21 members and only MySpace members have access to MySpace

22 communication services.

23        Although MySpace membership is free, prospective members are

24 required to agree to certain Terms of Service ("TOS") before they

25 can become members.  Prospective members are "authorized" to use

26 MySpace's services only if they agree to abide by all applicable

27

28                                    3

laws and the TOS.  ("You are only authorized to use the Services . . . if you agree to abide by all applicable laws and to this Agreement").  The TOS also enumerate certain conduct that is not permitted on the website, is unauthorized, and can lead to termination of the member's account.  Among other things, the rules prohibit:

1.  "criminal or tortious activity, including child pornography, fraud, trafficking in obscene material, drug dealing, gambling, harassment, stalking, spamming, spimming, sending of viruses or other harmful files, copyright infringement, patent infringement or theft of trade secrets"

2.  "using any information obtained from [MySpace services] in order to harass, abuse, or harm another person"

3.  "soliciting personal information from anyone under 18"

4.  "harass[ing] or advocat[ing] harassment of another person.

5.  promot[ing] information that the member knows is false or misleading; and

6.  using a photograph with out a person's consent.

The registration process and TOS also require prospective members to promise that their registration information is truthful and accurate.

B.   DEFENDANT EMBARKS ON SCHEME TO OBTAIN INFORMATION ABOUT M.T.M.

For several years, defendant's family, the Drews, and another local neighborhood family, the Meiers, were friendly. Each family had a daughter the same age who was friendly with the other and attended school together.  Over time, however, the two

4

girls drifted apart and, in 2005, the Meiers decided to transfer
their daughter, a thirteen year old girl with the initials
M.T.M., from the local public school to a local Catholic school.
Cristina Meier, M.T.M.'s mother confided in defendant that she
was concerned about M.T.M.'s mental health and was particularly
vulnerable at that time.

Over the summer of 2006, defendant and her family were
concerned that M.T.M. was spreading malicious rumors about
defendant's daughter.  Defendant discussed the matter with her
daughter and her eighteen year old employee, Ashley Grills, and
the three conceived of a scheme where they would pretend to be an
attractive male teenager on Myspace.com and approach M.T.M.
through MySpace using that false identity to obtain M.T.M.'s
confidence.  Once they had gained M.T.M.'s confidence, the co-
conspirators could find out what M.T.M. was saying on MySpace,
including what M.T.M. was saying about defendant's daughter.
Grills pointed out that there was a risk they would get in
trouble if the scheme were uncovered; however, defendant assured
Grills that they would not and, in any event, many people created
fake identities on the Internet.

C.   DEFENDANT AND HER CO-CONSPIRATORS USE THE FAKE MYSPACE
     ACCOUNT

Committed to the scheme, on September 18, 2008, defendant
and her co-schemers created a MySpace profile under the fake name
"Josh Evans."  "Evans" was supposedly a teenager who was new to
the area and was home schooled.  "Evans" was supposedly lonely

1   because he did not know anyone in the area and "his" father had
2   abandoned the family.   The co-schemers also posted a photograph
3   of an attractive boy on the profile to further the fraud.[1]   On
4   that same date, defendant and her co-schemers contacted M.T.M.
5   through the MySpace communication services.[2]   Smitten with the
6   attractive "boy's" invitation to communicate, M.T.M. agreed to
7   communicate with "him."

8        Although the initial communications were innocent enough,
9   within days, defendant encouraged her co-schemers to flirt with
10  M.T.M.   Defendant also discussed using the information obtained
11  during the scheme to humiliate M.T.M. in the real world.
12  Specifically, when it became clear that M.T.M. was attracted to
13  "Josh Evans," defendant proposed that the co-conspirators lure
14  M.T.M. to a mall where they would reveal that there was no "Josh
15  Evans" and taunt M.T.M. with the contents of her MySpace page and
16  information learned during the scheme.

17       On October 15, 2006, another girl in the neighborhood
18  obtained the username and password for the "Josh Evans" account
19  and sent M.T.M. a message suggesting that "Evans" did not want to
20  be friends with M.T.M. anymore because M.T.M. was not nice to her
21  friends.   When the co-schemers resumed the on-line conversation

22

23       [1] The co-conspirators did not ask anyone's permission before
24  posting the photograph.

25       [2] Because M.T.M. registered for a juvenile account, that is,
     an account for members under the age of sixteen, her account was
26  designated "private."   As a result, the content on her page was
     not available to the public at large and could only be viewed if
27  M.T.M. agreed to let the member contact her.

28                                    6

the following day, the dispute escalated until Grills told M.T.M. that the world would be a better place without M.T.M. in it. Distraught, M.T.M. hung herself in her bedroom closet.

When emergency crews responded to the Meier residence, defendant instructed her co-conspirators to find out what had happened. Upon learning that M.T.M. had attempted to commit suicide, defendant and her husband directed the co-schemers to delete the MySpace account.

Later that evening, defendant called the neighborhood girl who had sent M.T.M. the message on October 15. Defendant instructed her to "keep her mouth shut," to "stay off the MySpace," and to avoid accessing the Josh Evans account. Sensing something was amiss because defendant never called her daughter directly, the mother of the neighborhood girl, Michelle Mulford, asked her daughter what had happened. Mulford subsequently confronted defendant. Defendant told Mulford that she (defendant), her daughter, and Grills had created the account to play a prank on M.T.M. and that she (defendant) caused the account to be deleted. In a subsequent phone conversation, defendant tried to disclaim responsibility, telling Mulford that M.T.M. previously tried to commit suicide.

III

ARGUMENT

A.  THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BECAUSE THE INDICTMENT ADEQUATELY STATES A CRIME UNDER THE COMPUTER FRAUD AND ABUSE ACT

Defendant first contends the indictment fails to allege

facts that would fulfill the government's obligation to prove an

intentional accessing of a protected computer without

authorization or in excess of authorization.  (Def's Mot. at 8).

Defendant's argument fails for two reasons.

First, neither the Federal Rules of Criminal Procedure nor

due process require the government to enumerate all of the facts

that it intends to adduce at trial.  Rule 7 of the Federal Rules

of Criminal Procedure itself provides that an indictment must be

a "plain, concise and definite written statement of the essential

facts constituting the offense charged."  Fed. R. Crim. P.

7(c)(1).  "The instrument must set forth the elements of the

offense charged and contain a statement of the facts and

circumstances that will inform the accused of the elements of the

offense."  United States v. Fitzgerald, 882 F.2d 397, 399 (9th

Cir. 1989) (citation omitted).  "Ultimately, the test for

validity of an indictment is not whether it could have been

framed in a more satisfactory manner, but whether it conforms to

minimal constitutional standards."  United States v. Schmitt,

2005 WL 2449627 at *8 (E.D. Wisc. Oct. 3, 2005).

Here, the indictment provided defendant with adequate notice

of the charges against her.  As explained in greater detail in

the government's opposition to defendant's motion to dismiss for

failure to state a claim, the indictment alleges each of the

required elements for both statutes at issue.  United States v.

Buckley, 689 F.2d 897, 899 n.5  (9th Cir. 1982) ("Although Fed.

R. Crim P. 7© requires that the indictment be a 'plain, concise

and definite written statement of the essential facts
constituting the offense charged,' the courts have construed this
language to require little more than that the indictment give the
defendants sufficient notice of the crime"). Count One alleges
an unlawful agreement, namely, that defendant "conspired and
agreed with [others] intentionally to access a computer used in
interstate and foreign commerce without authorization and in
excess of authorized access and, by means of an interstate
communication, obtain information from that computer to further a
tortious act, namely, intentional infliction of emotional
distress, in violation of 18 U.S.C. §§ 1030(a)(2)(C),
(c)(2)(B)(2)." (Indictment, ¶ 14.) It likewise alleges several
means by which that unlawful objective was to be accomplished.
Specifically, the indictment alleges that defendant and her co-
schemers (1) fraudulently created an account on MySpace, (2) used
that account to obtain information about M.T.M., (3) used that
information to torment, harass, humiliate, and embarrass M.T.M.,
and (4) covered up the scheme by destroying the MySpace account.
(Indictment, ¶ 15.) The indictment also alleged twelve distinct
overt acts undertaken by defendant and her co-schemers in
furtherance of the conspiracy. (Indictment, ¶ 16.) The factual
allegations are more than sufficient to satisfy the minimal
requirements of Rule 7 and due process. <u>Wong Tai v. United
States</u>, 273 U.S. 77, 81 (1927) ("In charging . . . a conspiracy
'certainty to a common intent, sufficient to identify the offense
which the defendants conspired to commit is all that is

9

1  necessary.").

2      Likewise, Counts Two through Four, which charge violations
3  of 18 U.S.C. § 1030(a)(2), are adequately pled because each
4  alleges each of the necessary elements.  The indictment
5  explicitly alleges that defendant intentionally accessed a
6  computer without authorization and exceeded authorized access to
7  a protected computer (Indictment, ¶ 18); that her access of that
8  computer involved an interstate or foreign communication
9  (Indictment, ¶¶ 7-8, 18); that by accessing the computer without
10 authorization and exceeding authorized access, defendant obtained
11 information from a computer used in interstate or foreign
12 commerce or communication (Indictment, ¶ 8); and that the
13 information was used to further a tortious act, (Indictment,
14 ¶ 18).  The indictment also alleges dates when the unauthorized
15 access to protected computers occurred, as well as venue
16 allegations.  (Indictment, ¶ 18.)  Put simply, the ten page
17 indictment provides a wealth of factual detail in its
18 approximately 40 paragraphs and subparagraphs that defendant has
19 notice of the charges as well as the opportunity to plead double
20 jeopardy in a subsequent prosecution.

21     Defendant nonetheless contends the indictment is deficient
22 because it fails to allege the facts that will be offered to
23 prove the elements at issue.  This is not what is required by
24 Rule 7 or due process, however.  Brandon v. United States, 190
25 F.2d 175 (9th Cir. 1951)  "The indictment stage of the
26 proceedings is not the appropriate time to require the Government

27

28                              10

to present its proof." <u>Buckley</u>, 689 F.2d at 900 (relying on <u>United States v. Sampson</u>, 371 U.S. 75, 78-79 (1962).) Defendant's demand for greater factual detail is, therefore, improper.  In any event, as explained in greater detail in the government's opposition to defendant's motion to dismiss for failure to state a claim, the indictment does allege facts outlining the government's theory of the case as well as facts showing defendant's scienter.  (<u>See</u> Opposition at 12-14.)

B.   THE COURT SHOULD DENY DEFENDANT'S MOTION BECAUSE
     SECTION 1030 IS NOT UNCONSTITUTIONALLY VAGUE

Defendant next contends the indictment should be dismissed because she claims the CFAA is itself too vague.  In particular, defendant asserts that because the CFAA does not define "access" or "unauthorized," no one has adequate notice of the scope of the CFAA and, seemingly, any prosecution under the CFAA should be dismissed for vagueness.  Defendant's arguments are unavailing.

Courts have emphasized that to survive a vagueness challenge, a statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983); <u>Gammoh v. City of La Habra</u>, 395 F.3d 1114, 1119 (9th Cir. 2005)[3]  In applying those standards, courts

_____

[3] At least one court has rejected the argument that Section 1030 is vague in another context.  <u>See, e.g.</u>, <u>United States v. Fernandez</u>, 1993 WL 88197 (S.D.N.Y. Mar. 25, 1993) (rejecting argument that protected computer was unconstitutionally vague).

11

1  have emphasized that scienter requirements establish the

2  requisite minimal guidelines to prevent arbitrary or

3  discriminatory enforcement.  See United States v. Wyatt, 408 F.3d

4  1257, 1261 (9th Cir. 2005) ("The intent requirement thus limits

5  the discretion of law enforcement and mitigates any perceived

6  vagueness"); United States v. Panfil, 338 F.3d 1299, 1301 (11th

7  Cir. 2003) (terms meanings were clear and scienter requirement

8  clarified meaning and protected against arbitrary enforcement).

9  Courts have also recognized that even if statutes use subjective

10 terms, the statutes do not thereby become void for vagueness if

11 the subjective terms are used in combination with other terms.

12 Gammoh, 395 F.3d at 1119; Kev, Inc. v. Kitsap County, 793 F.2d

13 1053, 1057 (9th Cir. 1986) (holding that an ordinance prohibiting

14 dancers from "caressing" and "fondling" patrons was not vague "in

15 the context of the other definitions provided in the ordinance at

16 issue").  Ultimately to give fair notice of what constitutes a

17 criminal offense, a statute need not be drafted as precisely as

18 it possibly could have been.  As the Supreme Court has explained:

19      [F]ew words possess the precision of mathematical
        symbols, most statutes must deal with untold an
20      unforseen variations in factual situations, and the
        practical necessities of discharging the business of
21      government inevitably limit the specificity with which
        legislators can spell out prohibitions.  Consequently,
22      no more than a reasonable degree of certainty can be
        demanded.

23 Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340

24 (1952).

25      1.   The Term "Access" Is Sufficiently Particular

26      Although the CFAA does not define the term "access," courts

27

28                            12

have reasonably concluded that it includes the act of gaining

permission, liberty, or the ability to enter or communicate with

or the freedom or ability to obtain or make use of.  United

States v. Phillips, 477 F.3d 215, 220 n.4 (5th Cir. 2007) (citing

cases); Southwest Airlines Co. v. Boardfirst LLC, 2007 WL 4823761

(N.D. Tex. Sept. 12, 2007); Role Models America, Inc. v. Jones,

305 F. Supp. 2d 564, 566-67 (D. Md 2004); Am Online, Inc. v.

Nat'l Health Care Discount, Inc., 121 F. Supp.2d 1255, 1272-73

(N.D. Iowa 2000).[4]  Consequently, courts have applied the CFAA in

situations where defendants have "accessed" information from

protected computers by logging onto those computers and obtaining

text and other information from them.  See, e.g., id.  The fact

that an individual must "intentionally" access a protected

computer further insulates the statute from a due process

challenge.  See Village of Hoffman Estates v. Flipside, Hoffman

Estates, Inc., 455 U.S. 489, 499 (1982) ("[A] scienter

requirement [in a criminal statute] may mitigate a law's

vagueness, especially with respect to the adequacy of notice to

the complainant that his conduct is proscribed."); see also

United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002)

(defendant's actual knowledge that conduct was illegal foreclosed

vagueness challenge).  The fact that the access must be to obtain

information also helps to provide limits to the term "access."

---

[4] Section 1030(g) provides for a civil cause of action for
violations of 18 U.S.C. § 1030.  Following the enactment of that
provision, many of the cases construing Section 1030 have arisen
in the civil context.

13

1  Gammoh, 395 F.3d at 1119; Kev, 793 F.2d at 1057.

2      Defendant nonetheless seems to suggest that the term

3  "access" is unconstitutionally vague because courts have defined

4  the term differently.  (Def's Mot. at 10 (citing cases)).  As the

5  Ninth Circuit has held, however, the fact that courts have

6  construed a term in a variety of ways does not demonstrate that

7  the term is unconstitutionally vague.  United States v. Davis, 36

8  F.3d 1424, 1434 (9th Cir. 1994) ("Just because other courts of

9  appeal differ in their definitions of a term does not mean that

10 the term is void for vagueness.");  United States v. Wheeler, 972

11 F.2d 927, 929 (8th Cir. 1992) (same).  That is particularly true

12 where, as here, the conduct at issue satisfies any and all of the

13 proffered definitions.  Davis, 36 F.3d at 1434 (vagueness

14 challenge to 21 U.S.C. § 841 failed because substance was cocaine

15 base, however it was defined).  Defendant, after all, has been

16 charged with obtaining a membership in an on-line community which

17 allowed her to contact another member through protected

18 computers, send information to and communicate with that other

19 member through the protected computers, read information

20 regarding the other member stored on the protected computers, and

21 generally have access to content on the protected computers.

22 Under any of the varying definitions, what defendant did was

23 access the protected computers at issue.[5]  Accordingly, the term

24

25 ─────────────

   [5]Likewise, although defendant suggests that "access" could
26 include the act of viewing a log-on screen, courts have applied
   the common understanding by rejecting such a definition.  See,
27 e.g., Phillips, 477 F.3d at 21 n.4.

28                           14

1  "access" is not unconstitutionally vague.

2      2.  The Term "Unauthorized" Is Sufficiently Particular

3      Defendant next asserts that the CFAA is unconstitutionally

4  vague because it does not define "unauthorized."[6]  As the Fifth

5  Circuit has explained, "[c]ourts have . . . typically analyzed

6  the scope of a user's authorization to access a protected

7  computer on the basis of the expected norms of intended use or

8  the nature of the relationship established between the computer

9  owner and the user." United States v. Phillips, 477 F.3d 215, 219

10 (5th Cir. 2007).  Accordingly, some courts have concluded that

11 when users access computers in violation of rules established for

12 the use of those computers, the access is unauthorized.[7]  This

13 _____

14     [6] Although Congress did not define the phrase "without
   authorization," it did define the phrase "exceeds authorized
15 access" as "to access a computer with authorization and to use
   such access to obtain or alter information in the computer that
16 the accessor is not entitled so to obtain or alter." 18 U.S.C.
   § 1030(e)(6).

17
   [7] Int'l Airport Centers LLC v. Citrin, 440 F.3d 418, 420-21
18 (7th Cir. 2006) (breach of employment agreement); EF Cultural
   Travel BV v. Explorica, Inc., 274 F.3d 577, 583-84 (1st Cir.
19 2001) (breach of confidentiality agreement); EF Cultural Travel
   v. Zefer Corp., 318 F.3d 58, 63 (1st Cir. 2003) ("we think that
20 the public website provider can easily spell out explicitly what
   is forbidden . . . If EF wants to ban scrapers, let it say so on
21 the webpage or a link clearly marked as containing
   restrictions."); Modis v. Bardelli, 531 F. Supp.2d 314, 319 (D.
22 Conn. 2008) (plaintiff had adequately pled a violation of the
   CFAA by alleging defendant's conduct violated contract with
23 plaintiff); Ticketmaster LLC v. RMG Tech., Inc., 507 F.Supp.2d
   1096 (C.D. Cal. 2007) (Collins, J.) (violation of terms of
24 service resulted in "unauthorized access"); Hewlett-Packard Co.
   v. Byd:Sign, Inc., No. :05-CV-456, 2007 WL 275476, at *13 (E.D.
25 Tex. Jan. 25, 2007) (plaintiff adequately pled violation of CFAA
   by alleging defendant's conduct violated agreement regarding
26 access); George S. May Int'l. Co. v. Hostetler, 2004 WL 1197395,
   at *4 (N.D. Ill. May 28, 2004); Shurgard Storage Centers, Inc. v.
27 Safeguard Self Storage, Inc., 119 F. Supp.2d 1121 (W.D. Wash.

28                                15

1  conclusion is reasonable given the plain meanings of "authorized"

2  and its antonym "unauthorized." See Webster's New World

3  Dictionary, 3d Collegiate Ed. (1988) (defining "authorize" as "to

4  give official approval to or permission for").[8]  Finally, as

5  explained previously, the scienter requirement further addresses

6  any due process concern.

7     Defendant does not seem to dispute the plain meaning of the

8  statute.  Defendant nonetheless suggests that this definition

9  would suggest that "any violation of the TOS makes access

10 unauthorized, and therefore criminal." (Def's Mot. at 11).

11 Defendant's argument is unavailing.

12    First, defendant is mistaken that the statute makes all

13 violations of the TOS into criminal violations.  As explained in

14 greater detail in the government's opposition to defendant's

15 motion to dismiss for improper delegation, Section 1030 instead

16 sets forth several elements that must be met before criminal

17 liability will be imposed.  In particular, a defendant's

18

19 _____

20 2000) (employees engaged in unauthorized access when they
   accessed plaintiffs computer system to benefit defendant");
   America Online, Inc. v. LCGM, Inc., 46 F. Supp.2d 444, 450-51

21 (E.D. Va. 1998) (holding that massive email transmissions, or
   "spam," sent by customers of the plaintiff were sent without

22 authorization because the emails violated the terms of service of
   plaintiff); Hotmail Corp. v. Van$ Money Pie, Inc., 1998 WL 388389

23 (N.D. Cal. Apr. 16, 1998) (misuse of email addresses constituted
   "unauthorized" access).

24

25    [8] Although there are courts throughout the United States
   that have disagreed with this definition, Int'l Ass'n of
   Machinists and Aerospace Workers v. Werner-Masuda, 390 F. Supp.

26 2d 479 (D.Md 2005), this disagreement does not prove a due
   process violation either.  Davis, 36 F.3d at 1434; Wheeler, 972

27 F.2d at 929

28                                16

1  activities in accessing a computer without authorization or in

2  excess of authorization must be intentional.  As explained

3  previously, this scienter requirement ensures that the statute

4  and its enforcement comply with due process.  See Village of

5  Hoffman Estates, 455 U.S. at 499.

6      Second, to the extent defendant's argument is instead an

7  appeal to public policy, by suggesting that website operators

8  might restrict access on undesirable grounds, such as race,

9  defendant's argument does not sound in vagueness at all.  Bethea

10  v. Robert J. Adams & Associates, 352 F.3d 1152, 1127-28 (7th Cir.

11  2003) ("That argument about what makes for good public policy

12  should be directed to Congress; the judiciary's job is to enforce

13  the law Congress enacted, not write a different one that judges

14  think superior.")  Accordingly, defendant's due process challenge

15  to the statute on the basis of vagueness must fail.

16      3.  The CFAA Has Been Crafted with Ample Clarity to Prevent
          Arbitrary Enforcement

17

18      Defendant next asserts that the statute is impermissibly

19  vague because it fails to establish standards to guard against

20  arbitrary enforcement.  (Def's Mot. at 11-12).  In doing so,

21  defendant makes two interrelated arguments.  First, defendant

22  asserts that the indictment criminalizes "everyday, ordinary

23  conduct."  (Def's Mot. at 11.)  Second, defendant claims that the

24  fact that Section 1030 has not been previously used to address

25  cyberbullying "prov[es]" that this is arbitrary enforcement."

26  (Def's Mot. at 12.)  Neither argument is availing.

27

28                                  17

1       a.    The Theory of Prosecution Does Not Threaten to
2             Criminalize A Wide Scope of Conduct

3       Defendant's suggestion that the indictment threatens to
4  criminalize the innocent conduct of "millions" of Americans is
5  inaccurate, as the Ninth Circuit has recognized in applying a
6  different provision of the statute. United States v. Saban, 92
7  F.3d 865, 869 (9th Cir. 1996) ("the computer fraud statute does
8  not criminalize otherwise innocent conduct. Under the statute,
9  the Government must prove that the defendant intentionally
10 accessed a federal interest computer without authorization.
11 Thus, Saban must have had a wrongful intent in accessing the
12 computer in order to be convicted under the statute"). First, it
13 is doubtful that large segments of the population use online
14 identities to engage in similarly egregious conduct to "harass,
15 abuse, or harm other people;" or "solicit[] personal information
16 from anyone under 18," for example.

17      Second, Section 1030(a)(2) is applicable only where
18 unauthorized access is used to obtain information. See, e.g.,
19 18 U.S.C. § 1030(a)(2)(C) (unauthorized access to obtain
20 "information from any protected computer if the conduct involved
21 an interstate or foreign communication"). Even if many people
22 falsify personal information to obtain access in contravention of
23 the TOS, the underlying assumption that they commonly do so to
24 obtain information is questionable. For example, in the case of
25 cyber-bullying, the CFAA may be implicated infrequently because
26 cyber-bullying only rarely involves obtaining information, and

27

28                                18

far more commonly involves disseminating information in the form of insulting or hurtful e-mails or text messages.[9] Here, the co-schemers first sought to obtain information that they would later use to manipulate and humiliate the victim. Specifically, the co-schemers gained access to M.T.M.'s personal profile, which contained information that she posted that was otherwise unavailable to the co-schemers, which they then attempted to use to humiliate her. They also flirted with M.T.M. to collect information through their on-line communications with M.T.M. that they intended to use to humiliate her. Most cyber-bullying does not involve this first, fact-gathering stage.

Third, even if many people do falsify information to gain access to obtain information, the act is a felony only if the information is obtained to further a tortious act, the value of the information obtained exceeds $5,000, or the information is obtained for commercial advantage or private financial gain. 18 U.S.C. § 1030(c)(2)(B). Very few cases would rise to the level of an intentional tort resulting in felony liability.

Fourth, Section 1030 does not apply where the access to the computer at issue did not involve an interstate or foreign communication. This jurisdictional requirement alone would limit the statute's availability in a number of cases.

---

[9] By contrast, Section 1030 can and should be applied to address criminal organizations, including street gangs, who use social networking sites to communicate and direct criminal activities. It also has application in addressing the threat of child predators who pose as children to condition or seduce children.

1    Finally, as defendant herself observes elsewhere, Section

2  1030(a)(2) would not apply where the subject did not know the

3  conduct violated the terms of service.  See 18 U.S.C.

4  § 1030(a)(2) (requiring that unauthorized access be

5  "intentional").  Proof of the required intent is difficult to

6  collect and would likely preclude most prosecutions.  Indeed,

7  defendant appears prepared to argue at trial that the government

8  cannot prove the requisite scienter in this case.  Anderson v.

9  Morrow, 371 F.3d 1027, 1032 (9th Cir. 2004) ("The proper place

10 for Anderson's scienter argument was at trial, in the form of a[]

11 . . . defense").

12            b.    The Unusual Nature of the Case Does Not Suggest
                   the CFAA Cannot Be Applied in this Fashion

13          Defendant alternatively suggests that Section 1030 is

14 somehow unconstitutional because it has never been applied to

15 address cyberbullying.  (Def's Mot. at 11-12.)  Specifically,

16 defendant asserts that the fact that the CFAA has never been

17 applied to cyberbulling demonstrates that this prosecution is

18 arbitrary and discriminatory.  (Id.)  Defendant's argument is

19 misplaced.  First, "the fact that a statute can be applied in

20 situations not expressly anticipated by Congress does not

21 demonstrate ambiguity.  It demonstrates breadth."  Pennsylvania

22 Dept. of Corrections v. Yeskey, 524 U.S. 206, 212 (1998) (quoting

23 Sedima, S.P.L.R. v. Imrex Co., 473 U.S. 479, 499 (1985)).  This

24 is particularly true of Section 1030, which was enacted in an

25 effort to create an omnibus criminal statute to address cyber-

26 related crimes.  S. Rep. 104-357, 104th Cong., 2nd Sess. 1996,

27

28                                20

at *5 ("the Computer Fraud and Abuse statute facilitates addressing in a single statute the problem of computer crime, rather than identifying and amending every potentially applicable statute affected by advances in computer technology"); United States v. Mitra, 405 F.3d 492 (7th Cir. 2005).[10] Because the plain language applies to defendant's conduct, defendant's due process claim fails. United States v. Balint, 201 F.3d 928 (7th Cir. 2000) ("we withhold application of novel interpretations only if those interpretations amount to an unpredictable shift in the law. Due process does not require insulating defendants when our decision merely clarifies the meaning of a statute").

Second, defendant ignores that the unusual nature of the charge is a product of the unique nature of the crime. Cyberbullying itself is a recent phenomenon. See Juliana Raskauskas and Ann D. Soltz, "Involvement in Traditional and Electronic Bullying Among Adolescents," 43 Developmental Psychology 564 (2007) (describing cyberbullying as "new threat"); see also Justin W. Patchin and Sameer Hinduja, "Bullies Move Beyond the Schoolyard: A Preliminary Look at Cyberbullying," 4 Youth Violence and Juvenile Justice 148, 152 (2006) (noting limited scholarly attention and "anticipated proliferation"); http://www.dallasnews.com/ sharedcontent/dws/news/localnews/ stories/012009dnmetscoutbullies.24d01f1.html (noting that only

---

[10]Indeed, even in enacting Section 1030, Congress recognized that the rapid development of technology, and the concomitant development of new crimes, required the government to apply statutes in new ways to address new crimes.

1   recently did the Boy Scout's Manual include advice on cyber

2   bullying).  Moreover, the vehicle for the cyberbullying at issue

3   here, a social networking website, only became mainstream after

4   2000.[11]  Consequently, although defendant points out that this

5   may be the first time that the CFAA has been applied to

6   cyberbullying in the social networking context, she ignores that

7   the threat itself emerged only in the last few years.[12]

8       4.   There Is No Due Process Violation Due to Alleged Lack
             of Notice

9

10      Defendant finally contends the indictment offends due

    process because defendant asserts that no one reviews or
11
    understands the terms of service that govern the use of websites.
12
    Once again, defendant suggests that the government maintains that
13

14

_____

15      [11]While versions of social networking existed from the
    earliest, proto-versions of the Internet,
16   http://en.wikipedia.org/wiki/Social_networking #cite_note-10
    (describing theoretical application of social networking and
17   relying on S. Roxanne Hiltz and Murray Turoff, The Network Nation
    xx (forward by Suzanne Keller) (Addison-Wesley 1993)) the first
18   recognizable social network site launched in 1997 and such sites
    only became sustainable after 2000.  Danah M. Boyd, "Social
19   Network Sites: Definition, History, and Scholarship," Journal of
    Computer-Mediated Communication, (2007) (describing one failed
20   social networking website as "ahead of its time"), available at
    http://jcmc.indiana.edu/vol13/issue1/boyd. ellison.html.
21
        [12]In that regard, United States v. Mitra, 405 F.3d 492 (7th
22   Cir. 2005), is instructive.  In that case, the defendant argued
    he could not be convicted under Section 1030 for disrupting a
23   municipal computer-based radio system because Congress could not
    have thought such a system was a "computer" covered by the
24   statute.  Id. at 495.  In rejecting defendant's argument, the
    court observed that "Section 1030 is general."  Id.  It noted
25   that as technology developed, the effective scope of the statute
    would grow.  Id.  It noted that while the expansion of the
26   statute might prompt Congress to amend the statute, technological
    development "did not authorize the judiciary to give the existing
27   version less coverage than its language portends."  Id.

28                              22

1  "any violation of the detailed TOS makes access to the site

2  unauthorized, and therefore criminal." (Def's Mot. at 12.) Not

3  so. As defendant concedes elsewhere in the brief, (Def's Mot. at

4  7), the government must prove a variety of other elements,

5  specifically, that defendant intentionally accessed the computer

6  without authorization, that the conduct was engaged in to obtain

7  information, that the conduct involved an interstate

8  communication, and that the computer at issue operated in

9  interstate and foreign communication. Under Apprendi v. New

10  Jersey, 530 U.S. 466 (2000), the government must also show beyond

11  a reasonable doubt that defendant's conduct was in furtherance of

12  a tortious act. Consequently, although defendant would have the

13  Court believe that Section 1030 presents a trap for the unwary,

14  the elements of the crime ensure that the negligent and unwitting

15  are not charged or convicted.[13]

16

17

18

19

20

21

22

23

24

25

26  　　[13] Fundamentally, defendant's argument is a fact-based
challenge that the government anticipates defendant will make at

27  trial. Anderson, 371 F.3d at 1032.

28  　　　　　　　　　　　　　　　　　　　23

IV.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for vagueness should be denied.

Dated: August 12, 2008

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

_____
MARK C. KRAUSE
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

24