THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (SBN 198142)
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual
Property Crimes Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3493
    Facsimile: (213) 894-8601

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 08-582-GW |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S MOTION IN LIMINE |
| | ) | TO EXCLUDE HEARSAY STATEMENTS |
| v. | ) | UNDER FEDERAL RULE OF EVIDENCE |
| | ) | 802; MEMORANDUM OF POINTS AND |
| LORI DREW, | ) | AUTHORITIES |
| | ) | |
| Defendant. | ) | Trial Date: October 7, 2008 |
| | ) | Trial Time: 8:00 a.m. |
| | ) | Place: Courtroom of the |
| | ) |       Hon. George Wu |
| | ) | |
| | ) | |

    Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Mark C. Krause, hereby files this motion *in limine* for an order excluding defendant Lori Drew's hearsay statements pursuant to Federal Rule of Evidence 802.

///

1    This motion is based upon the attached memorandum of points
2  and authorities, the files and records in this case, and any
3  other evidence that the Court may wish to consider.

4  Dated: September 27, 2008        Respectfully submitted,

5                                   THOMAS P. O'BRIEN
                                    United States Attorney
6
                                    CHRISTINE C. EWELL
7                                   Assistant United States Attorney
                                    Chief, Criminal Division
8
                                    _____
9                                   MARK C. KRAUSE
                                    Assistant United States Attorney
10
                                        Attorneys for Plaintiff
11                                      UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I

INTRODUCTION

Defendant Lori Drew has been charged in the four count indictment with: (1) conspiracy to access protected computers without authorization, in violation of 18 U.S.C. § 371; and (2) unauthorized access to a protected computer to obtain information to further a tortious act, in violation of 18 U.S.C. § 1030(a)(2). Trial in this matter has been scheduled for October 7, 2008.

At trial, the government intends to introduce evidence regarding a series of statements defendant made to a neighbor, a friend, and a law enforcement officer, among others, regarding her role in the creation of a MySpace account in the name of a boy to obtain information that would be used to harass a juvenile victim. Defendant's prior statements in this context are admissions by a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence. The government's introduction of that evidence, however, does not entitle defendant to introduce evidence about self-serving statements she made on other occasions to law enforcement or to other witnesses.

II

FACTUAL BACKGROUND

As laid out in the government's other pre-trial submissions, defendant is charged with orchestrating a scheme to obtain information regarding M.T.M., a rival of her daughter, by

1

accessing computers belonging to MySpace without authorization and in excess of authorizations.  Specifically, defendant and her unindicted co-conspirators created a fake on-line identity belonging to a cute teenage boy under the fake name "Josh Evans." Defendant and her co-schemers then contacted M.T.M. through the MySpace communication services.  Smitten with the attractive "boy's" invitation to communicate, M.T.M. agreed to communicate with "him."

Although the initial communications were innocent enough, within days, defendant encouraged her co-schemers to flirt with M.T.M.  Defendant also discussed using the information obtained during the scheme to humiliate M.T.M. in the real world. Specifically, when it became clear that M.T.M. was attracted to "Josh Evans," defendant proposed that the co-conspirators lure M.T.M. to a mall where they would reveal that there was no "Josh Evans" and taunt M.T.M. with the contents of her MySpace page and information learned during the scheme.

During the scheme, defendant discussed it with a series of individuals, such as her hairdresser and a business contact. During those conversations, defendant would explain that she and others were playing a joke on M.T.M..  Defendant denied any untoward purpose and dismissed concerns over her "prank."

On October 15, 2006, another girl in the neighborhood obtained the username and password for the "Josh Evans" account and sent M.T.M. a message suggesting that "Evans" did not want to be friends with M.T.M. anymore because M.T.M. was not nice to her

2

friends.  When the co-schemers resumed the on-line conversation
the following day, the dispute escalated until co-conspirator
Ashley Grills told M.T.M. that the world would be a better place
without M.T.M. in it.  Distraught, M.T.M. hung herself in her
bedroom closet.

When emergency crews responded to the Meier residence,
defendant instructed her co-conspirators to find out what had
happened.  Upon learning that M.T.M. had attempted to commit
suicide, defendant and her husband directed the co-schemers to
delete the MySpace account.

Later that evening, defendant called the neighborhood girl
who had sent M.T.M. the message on October 15.  Defendant
instructed her to "keep her mouth shut," to "stay off the
MySpace," and to avoid accessing the Josh Evans account.  Sensing
something was amiss because defendant never called her daughter
directly, the mother of the neighborhood girl, Michelle Mulford,
asked her daughter what had happened.  Mulford subsequently
confronted defendant.  Defendant told Mulford that she
(defendant), her daughter, and Grills had created the account to
play a prank on M.T.M. and that she (defendant) caused the
account to be deleted.  In a subsequent phone conversation,
defendant tried to disclaim responsibility, telling Mulford that
M.T.M. previously tried to commit suicide.

On November 25, 2006, defendant contacted the St. Charles
Sheriff's Department to notify them about a neighborhood dispute.
Defendant told the responding deputy that she needed to confront

her neighbors, the Meiers, regarding their daughter's suicide.
She went on to explain that she wanted to "just tell them" what
she did to contribute to M.T.M.'s suicide.  In particular,
defendant stated that she instigated and monitored a MySpace
account belonging to a "good looking" male for the sole purpose
of communicating with M,T.M.  To find out what M.T.M. was saying
on line.  Defendant stated that the communications with M.T.M.
were aimed about gaining her confidence to find out what she was
saying about defendant's daughter and other people.  Defendant
stated that she, her daughter and Grills typed, read and
monitored the communication between fake male profile and M.T.M.
and that the conversation became sexual for a 13-year old.  She
also pointed out that she did not feel as guilty because she
found out Megan had tried to commit suicide before.  She
explained that she wanted the tension in the neighborhood
documented in case property damaged in the future.  Defendant
also complained to a business colleague a backlash regarding her
involvement in the scheme.

As the months progressed, however, defendant began to
disclaim involvement in the scheme.  When defendant was
interviewed by agents with the Federal Bureau of Investigation,
for example, defendant claimed she was not involved in the scheme
to create the account -- although she acknowledged knowing of its
existence.  The FBI also surreptitiously recorded a conversation
between defendant and M.T.M.'s mother during which defendant
again disclaimed involvement in the scheme, or knowledge of

4

M.T.M.'s fragile mental health.

III

ARGUMENT

A.    DEFENDANT MAY NOT AVOID TESTIFYING BY RELYING ON HER SELF-
SERVING HEARSAY STATEMENTS

A defendant's statements are admissible only if offered against her; a defendant may not elicit her own prior statements. Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (district court properly sustained government's hearsay objection to defendant's attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent).  To permit otherwise would allow a defendant to place his statements "before the jury without subjecting him[] to cross-examination, precisely what the hearsay rule forbids." United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (district court properly granted the government's motion in limine to exclude defendant's post arrest statements through cross examination of INS agent), quoting Fernandez, 839 F.2d at 640; United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) ("a defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination"); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985) (same).  The reason for this is clear: defendants are not prevented from introducing evidence necessary to put on their defense; nevertheless, if a defendant wishes to introduce her own exculpatory statements, she must do

5

so by testifying.

At trial, the government intends to introduce statements by defendant to various individuals, including a neighbor, a friend, and a law enforcement officer.  In particular, the government intends to introduce defendant's admissions regarding, among other things: (1) that defendant participated in the decision to create the account; (2) that defendant some of the messages; (3) that defendant instructed others on what to type; and (4) that she participated in the scheme to obtain information about M.T.M. and what she was saying.

The government anticipates that defendant may claim that (1) she was not responsible for creating the Josh Evans account; (2) she did not type any of the messages; (3) she did not send any of the messages; and (4) she did not direct anyone to create the account or send any messages.  Defendant may not, however, seek to introduce her own self-serving prior statements on other occasions as a means to avoid testifying at trial.  To allow otherwise is precisely what the hearsay rule forbids.  Fed. R. Evid. 801(c), 802; <u>Ortega</u>, 203 F.3d at 682; <u>Fernandez</u>, 839 F.2d at 640; <u>Cunningham</u>, 194 F.3d at 1199; <u>Willis</u>, 759 F.2d at 1501.

B.   THE RULE OF COMPLETENESS DOES NOT WARRANT ADMISSION OF ANY OF DEFENDANT'S SELF-SERVING HEARSAY STATEMENTS HERE

Nor may defendant seek to introduce self-serving hearsay statements under the rule of completeness.  Federal Rule of Evidence 106 provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the

6

> introduction at that time of any other part or any
> other writing or recorded statement which ought in
> fairness to be considered contemporaneously with it.

Fed. R. Evid. 106.  The advisory notes to Fed. R. Evid. 106

further provide:

> The rule is based on two considerations.  The first is
> the misleading impression created by taking matters out
> of context.  The second is the inadequacy of repair
> work when delayed to a point later in the trial. . . .
> For practical reasons, the rule is limited to writings
> and recorded statements and does not apply to
> conversations.

Evidence that is inadmissible is not made admissible by

recitation of the rule of completeness.  See United States v.

Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admitted

regardless of Rule 106).  As the Ninth Circuit noted in Ortega, a

defendant's non-self-inculpatory statements are inadmissible

hearsay even if they were made contemporaneously with other

self-inculpatory statements.  Ortega, 203 F.3d at 682 (citing

Williamson v. United States, 512 U.S. 594, 599 (1994)).  The

self-inculpatory statements that may be offered by the government

here are admissions by a party-opponent under Rule 801(d)(2) and

therefore are not hearsay.  However, if offered by the defendant,

the non-self-inculpatory statements are still inadmissible

hearsay.  See Ortega, 203 F.3d at 682 (citing Williamson, 512

U.S. at 599, which found that "[t]he fact that a person is making

a broadly self-inculpatory confession does not make more credible

the confession's non-self-inculpatory parts [which are

hearsay]").

In United States v. Burreson, 643 F.2d 1344 (9th Cir. 1980),

7

for example, the Ninth Circuit explained the district court properly excluded portions of a transcript of a prior proceeding before the Securities and Exchange Commission ("SEC") as inadmissible hearsay. Id. at 1349. The government had introduced at trial sworn statements that the defendants had given during a prior SEC proceeding but declined to introduce the entire transcript. Id. The defendants argued that the decision to admit only a portion of the transcript violated the rule of completeness. Id. The Ninth Circuit disagreed, noting that the district court "carefully considered the entire transcript, and added material to the excerpt offered by the government to put it in proper context." Id. As a consequence, the district court did not abuse its discretion in concluding the remaining portion was "irrelevant and inadmissible hearsay." Id.

This case is even stronger than Burreson. Whereas in Burreson the Ninth Circuit held the district court did not err when it excluded as inadmissible hearsay statements within a single transcript during a single deposition, the government here seeks to exclude statements to individuals on completely different occasions. Any other holding would allow for the admission of inadmissible hearsay contrary to the Federal Rules of Evidence, Ortega, and Collicott.

///

///

///

8

IV

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court exclude defendant's self-serving statements as inadmissible hearsay evidence.

Dated: September 22, 2008

                         Respectfully submitted,

                         THOMAS P. O'BRIEN
                         United States Attorney

                         CHRISTINE C. EWELL
                         Assistant United States Attorney
                         Chief, Criminal Division


                         _____
                         MARK C. KRAUSE
                         Assistant United States Attorney

                         Attorneys for Plaintiff
                         United States of America