THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (Cal. State Bar No. 198142)
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual
Property Crimes Section
YVONNE L. GARCIA (Cal. State Bar No. 248285)
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3493/0719
    Facsimile: (213) 894-8601/0141
    E-mail:  mark.krause@usdoj.gov
            yvonne.garcia@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 08-582-GW |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S OPPOSITION TO |
| v. | ) | DEFENDANT'S MOTION FOR JUDGMENT |
| | ) | OF ACQUITTAL |
| LORI DREW, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

    Plaintiff United States of America, by and through its

counsel of record, United States Attorney Thomas P. O'Brien and

Assistant United States Attorneys Mark C. Krause and Yvonne L.

Garcia, respectfully files its opposition to defendant's motion

for judgment of acquittal pursuant to Federal Rule of Criminal

Procedure 29(a).

//

This opposition is based on the attached memorandum of points and authorities, the files and records of this case, including the testimony and exhibits introduced at trial in this matter, and any additional evidence or oral argument the Court may wish to consider.

Dated: November 23, 2008

                              Respectfully submitted,

                              THOMAS P. O'BRIEN
                              United States Attorney

                              CHRISTINE C. EWELL
                              Assistant United States Attorney
                              Chief, Criminal Division


                              _____/s/_____
                              MARK C. KRAUSE
                              Assistant United States Attorney

                              YVONNE L. GARCIA
                              Assistant United States Attorney

                              Attorneys for Plaintiff
                              United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On November 21, 2008, the government completed its case-in-chief against defendant Lori Drew ("defendant"). Drew is charged with (1) conspiracy to access protected computers without authorization or in excess of authorized access to obtain information, in violation of 18 U.S.C. § 371 (count one); and (2) intentionally accessing protected computers without authorization or in excess of authorized access to obtain information, and doing so in furtherance of a tortious act, namely, intentional infliction of emotional distress, in violation of 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(B)(ii) (counts two through four).

At the close of the government's case, defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) ("Rule 29(a)"). Defendant claims that the government did not present sufficient evidence that defendant knew that her accessing of the MySpace servers in Los Angeles, California, was without authorization or in excess of authorization because the government has not shown that defendant read the MySpace Terms of Service ("TOS").[1] The Court reserved judgment and took the motion under submission in order to review transcripts of pertinent government witness testimony. The Court

---

[1] The government concedes that it cannot prove that defendant read the MySpace TOS. As discussed below, however, the crimes charged do not require proof that defendant read the MySpeace TOS. The government may, as it has, show that defendant knew her access to be unauthorized or in excess of authorized access, by way of other evidence.

1

1 also requested briefing from the parties regarding the standard
2 it should apply in considering defendant's Rule 29(a) motion.

3     For the reasons described in detail below, defendant's
4 motion should be denied.  First, the government is not required
5 to prove that defendant read the MySpace TOS in order prove that
6 she knew her accessing of the MySpace servers was unauthorized or
7 in excess of authorized access.  Second, the government has
8 presented substantial direct and circumstantial evidence from
9 which a reasonable juror could infer that defendant knew that she
10 was accessing the MySpace computers without authorization or in
11 excess of authorization because knew her conduct in helping to
12 create a fictitious juvenile account and then use this account to
13 torment another juvenile, M.T.M., was "illegal," wrong, and in
14 violation of MySpace's rules, yet continued using the MySpace
15 account to further this conduct.  Because a rational trier of
16 fact reviewing this evidence and drawing all inferences in favor
17 of the government could find that the essential elements of the
18 crimes charged have all been proven beyond a reasonable doubt,
19 the Court must deny defendant's motion.

20                              **II.**

21                          **ARGUMENT**

22 **A.    IN RULING ON A MOTION FOR JUDGMENT OF ACQUITTAL, THE COURT**
       **MUST DRAW ALL REASONABLE INFERENCES IN FAVOR OF THE**
23     **GOVERNMENT**

24     Rule 29(a) permits a trial court to "enter a judgment of
25 acquittal on any offense for which the evidence is insufficient
26 to sustain a conviction."  In ruling on a motion for judgment of
27 acquittal, the court must review the evidence "in the light *most*
28 *favorable to the government* to determine whether 'any rational

                              2

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Freter, 31 F.3d 783, 785 (9th Cir. 1994) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis added); see also United States v. Iriarte-Ortega, 113 F.3d 1022, 1024 n.2 (9th Cir. 1997); United States v. Bancalari, 110 F.3d 1425, 1428 (9th Cir. 1997).  In its review of the evidence for this purpose, the court must assume that the trier of fact could resolve all credibility issues and any "conflicting inferences" from the evidence in favor of the government.  See United States v. Johnson, 229 F.3d 891, 894 (9th Cir. 2000).

**B.    AS A MATTER OF LAW, A DEFENDANT CAN INTENTIONALLY ACCESS A COMPUTER "WITHOUT AUTHORIZATION" OR "EXCEED AUTHORIZED ACCESS" EVEN IF SHE DID NOT READ THE TERMS OF SERVICE THAT DEFINE WHAT CONSTITUTES AUTHORIZED ACCESS**

Section 1030(a)(2)(C) prohibits anyone from intentionally accessing a computer without authorization or in excess of authorization, and thereby obtaining information from any protected computer if the conduct involved an interstate or foreign communication.  18 U.S.C. § 1030(a)(2)(C).  In support of her Rule 29(a) motion, defendant erroneously argues that the government presented insufficient evidence at trial to prove that defendant intentionally accessed the MySpace server without authorization or in excess of authorization because the government did not present evidence that defendant read the MySpace TOS.  Proof of that fact is not required, however.

The Computer Fraud and Abuse Act ("CFAA") does not

3

1  explicitly define "without authorization."[2]  Courts have

2  routinely looked to written agreements, including TOS, to

3  determine whether access of a protected computer is authorized,

4  unauthorized, or in excess of authorization.  In doing so, courts

5  have suggested that a plain meaning interpretation of "without

6  authorization" should apply.  See, e.g., Calyon v. Mizuho Sec.

7  USA, Inc., 2007 WL 2618658 (S.D.N.Y. Sept. 5, 2007) ("the plain

8  language of the statute seems to contemplate that, whatever else,

9  'without access' and 'exceeds authorized access' would include an

10  employee who is accessing documents on a computer system which

11  that employee had to know was in contravention of the wishes and

12  interests of his employer"); Calence LLC v. Dimension Data

13  Holdings, 2007 WL 1526349 (W.D. Wash. May 23, 2007) (in case

14  alleging defendant breached employment and confidentiality

15  agreements in accessing and disseminating information, holding

16  "this Court has generally accepted the notion that Congress

17  intended to encompass actions such as those allegedly taken by

18  defendant"); Ticketmaster LLC v. RMG Tech., Inc., 507 F.Supp.2d

19  1096 (C.D. Cal. 2007) (Collins, J.) (violation of terms of

20  service resulted in "unauthorized access"); Hewlett-Packard Co.

21  v. Byd:Sign, Inc., No. 05-CV-456, 2007 WL 275476, at *13 (E.D.

22  Tex. Jan. 25, 2007) (defendant's conduct violated written

23  agreements regarding access and were, therefore, unauthorized);

24  America Online, Inc. v. LCGM, Inc., 46 F. Supp.2d 444, 450-51

25  (E.D. Va. 1998) (holding that massive email transmissions, or

26

27      [2]Section 1030(e)(6) defines the term "exceeds authorized
   access" as "to access a computer with authorization and to use
28   such access to obtain or alter information in the computer that
   the accesser is not entitled to so obtain or alter."

4

1  "spam," sent by customers of the plaintiff were sent without

2  authorization because the emails violated the terms of service of

3  plaintiff); Hotmail Corp. v. Van$ Money Pie, Inc., 1998 WL 388389

4  (N.D. Cal. Apr. 16, 1998) (misuse of email addresses in violation

5  of terms of service constituted "unauthorized" access).  Put

6  simply, to access a computer without authorization means "to

7  access a computer without the approval, permission, or sanction

8  of the computer's owner."  Gov't Proposed Jury Instruction No.

9  26; see also Webster's New World Dictionary, 3d Collegiate Ed. 92

10  (1988) (defining "authorization" as "legal power or right,

11  sanction"); http://dictionary.reference.com /browse/authorized

12  (defining "authorization" as "permission or power granted by an

13  authority, sanction"); see also Black's Law Dictionary 1559, 143

14  8th ed. (defining "unauthorized" as "done without authority" and

15  "authorize" as "to give legal authority; to empower" and "to

16  formally approve").

17      TOS, by their very nature, define both authorized and

18  unauthorized uses of a website.  Conduct in accessing a computer

19  in violation of the terms set forth by the computer's owner is

20  plainly "without the approval, permission, or sanction" of that

21  computer owner.  MySpace's TOS explicitly prohibit posting the

22  photograph of a person without that person's consent, harassment,

23  abusive conduct, encouraging others to harass, and solicitation

24  of personal information from anyone under the age of 18 – all

25  activities in which defendant engaged by using the fake MySpace

26  account.  (See Gov't Ex. 3.)  As Jae Sung, MySpace's Vice

27  President of Customer Care, testified, these rules are necessary

28  to ensure a safe online community.  MySpace even has teams of

5

employees dedicated to ensuring that members adhere to the TOS. Failure to comply results in termination of services and, on occasion, referral to law enforcement.  MySpace's policing of its website to enforce the TOS makes it clear that access that involves a violation of the TOS is "without the approval, permission, or sanction" of MySpace.

Although the point at which access becomes "without authorization" or in excess of authorization is defined by the MySpace TOS, defendant need not have read the TOS in order for her conduct to be in violation of the law.  As an initial matter, the statute merely requires that defendant intend to access a computer without authorization or in excess of authorization -- it does not explicitly mention TOS, nor does it limit in any way the means by which the intent to engage in unauthorized access must be established.  Nothing in the statute, therefore, can be read as requiring that a defendant must actually read the TOS that render her access unauthorized so long as there is alternative evidence from which a jury can infer this knowledge.

Moreover, absent from the statute is any use of the term Congress has used when it intends to require actual knowledge of the specific rules that render one's conduct unlawful, namely, the term "willfulness."  A venerable principle of criminal law is that ignorance of the law is no defense to a criminal charge. <u>Cheek v. United States</u>, 498 U.S. 192, 199 (1991).  This is a concept that is "deeply rooted in the American legal system." <u>Id.</u>  Where Congress has intended to soften that blow, it has done so explicitly by ascribing a *mens rea* that requires the defendant's conduct to be "willful."  <u>Id.</u> at 200.  The Ninth

Circuit has repeatedly held that where a statute does not require proof of a willful violation, the government is not required to prove that a defendant has knowledge of the particular law that has been violated.  <u>See</u>, <u>e.g.</u>, <u>United States v. Hancock</u>, 231 F.3d 557, 562 (9th Cir. 2002) (affirming district court's refusal to give instruction that defendant "knew that it was illegal for him to possess firearms" because prosecution under 18 U.S.C. § 922(g) does not require proof of willful violation).  That section 1030(a)(2)(C) does not contain a willfulness requirement, therefore, supports the government's position that it is not required to prove that defendant read the TOS in order for the jury to find that defendant intentionally accessed the MySpace server "without authorization" or in excess of authorization, but may instead prove defendant's knowledge that her access was unauthorized or in excess of authorization by other means.

**C.   THE GOVERNMENT HAS PRESENTED SUBSTANTIAL EVIDENCE THAT DEFENDANT KNEW THAT THE CONTINUED USE OF THE MYSPACE ACCOUNT WAS WRONG, IN VIOLATION OF MYSPACE RULES, AND ILLEGAL, YET CONTINUED TO MAINTAIN AND USE IT "WITHOUT AUTHORIZATION" OR IN EXCESS OF AUTHORIZATION**

The evidence presented by the government in its case-in-chief strongly supports the inference that defendant intentionally accessed the MySpace servers "without authorization" or in excess of authorization because defendant was placed on notice that her conduct was wrong, in violation of the rules of MySpace, and illegal, yet insisted on perpetuating the scheme using the fake MySpace account.  Rational jurors could find beyond a reasonable doubt, based upon the testimony of Ashley Grills, Christina Chu, and Christina Meier that defendant intentionally accessed the MySpace servers "without

authorization" and in excess of authorization.

First, defendant's co-conspirator Ashley Grills twice raised concerns about the propriety of the "Josh Evans" scheme to defendant and explained that their conduct was "illegal." Within days of creating the fake MySpace account, both Ms. Grills and defendant's own daughter, S.D., told defendant that they were concerned that they would get in trouble because what they were doing was "illegal."

> Q:   During the first week after you created the account did anyone raise any concerns about what you were doing?
>
> A:   Yes.
>
> Q:   And who was that?
>
> A:   It was both [S.D.] and I.
>
> Q:   And who did you raise those concerns with?
>
> A:   Lori.
>
> Q:   And what did you tell the defendant?
>
> A:   That we thought we would get in trouble because it's illegal to make a fake MySpace.

(Draft Grills Tr. at 14, 1. 4-13 (emphasis added).) Defendant, however, dismissed Ms. Grills' concerns. Defendant told her "it was fine," and that "people do it all the time." (Id. at 14, 1. 16.) (Id. at 15, 1. 8-15.) Ms. Grills renewed her objections later, stating she no longer wanted to be involved. (Id. at 15, 1. 21-22.) Despite this second warning, defendant again assured Ms. Grills "that it was fine and it didn't matter and [they] weren't going to get in any trouble." (Id. at 15, 1. 24-25.) Such evidence supports an inference that during the pendency of the conspiracy, defendant was aware of the rules of MySpace, knew

that the scheme was illegal because it violated those rules, but believed (and so assured Ms. Grills and S.D.) That she need not worry about the improper conduct because of a perceived lack of enforcement.

Similarly, when defendant visited Michael A's Hair Salon, she bragged to her hairdresser, Bonnie King, about the fake MySpace account.  According to Dawn Chu's testimony, defendant explained to Ms. King that she was posing as a boy on MySpace in order to get back at an unidentified girl.  Dawn Chu became upset and told defendant that her conduct was wrong.  Defendant did not respond and instead continued to use the fake MySpace account.  A rational jury could infer that this represented a third time that defendant was placed on notice that her conduct in creating adn using the fake MySpace account was wrong and illegal, and that defendant's ongoing persistence in using the fake MySpace account represented intentional access of the MySpace servers "without authorization" or in excess of authorization.

Second, defendant's actions upon learning that M.T.M. had committed suicide are evidence of consciousness of guilt that further demonstrate defendant's knowledge that her use of the MySpace account was unauthorized.  After Grills and daughter S.D. investigated the cause of the ambulances at the Meier home and told defendant that M.T.M. had committed suicide, defendant "was kind of quiet for a minute and then her husband started yelling at [Grills and S.D.] to get rid of the MySpace and then [defendant] started yelling at [Grills and daughter S.D.] to get rid of the MySpace."  (Draft Grills Tr. at 22, l. 9-11.)  The fact that, immediately after M.T.M.'s death, defendant took steps

1  to evade detection by law enforcement by seeking to destroy

2  evidence of the fake MySpace account clearly supports an

3  inference that defendant knew that it was her use of the MySpace

4  account that rendered her conduct illegal because that use was

5  unauthorized.  Leathers v. United States, 250 F.2d 159, 159, 162

6  (9th Cir. 1957) (destruction of tax records relevant to

7  defendant's knowledge of illegal conduct; citing Wigmore on

8  Evidence); see also United States v. James, 764 F.2d 885, 890

9  (D.C. Cir. 1985) (destruction of evidence relevant to defendant's

10  knowledge of illegal conduct related to drug trafficking); United

11  States v. Robinson, 635 F.2d 981 (2d Cir. 1980) (destruction of

12  passport relevant to defendant's knowledge of illegal conduct).

13  Defendant, after all, did not instruct her co-conspirators to

14  destroy the evidence of other modes of electronic communication

15  used in communicating with M.T.M., like AOL Instant Messenger,

16  Xanga, or Yahoo! Messenger, thus demonstrating her knowledge that

17  the use of the fake MySpace account was materially different and

18  more culpable, precisely because that use was so patently

19  unauthorized and wrong.  Evidence regarding consciousness of

20  guilt, combined with the fact that defendant was placed on notice

21  multiple times that her conduct was wrong, would enable a

22  rational jury to infer that defendant persisted in using the fake

23  MySpace account with the required intent of accessing the MySpace

24  servers "without authorization" and in excess of authorization.

25      Finally, defendant was aware that S.D. had set up her own

26  fake MySpace account prior to the summer of 2006.  Ms. Meier

27  testified that, prior to creation of the "Josh Evans" MySpace

28  account, M.T.M. and S.D. created a different MySpace account

10

1  using the fake name "Kelly." (Draft Meier Tr. at 115, l. 20;
2  116, l. 8.)  The girls portrayed "Kelly" as an 18 year old woman.
3  The girls established the "Kelly" account so that they could
4  "talk to boys." (<u>Id.</u> at 116, l. 9.)  After learning about the
5  "Kelly" MySpace account, Ms. Meier contacted defendant "and told
6  her that Megan was not allowed on the computers at [the Drew]
7  home." (<u>Id.</u> at 117, l. 10-11.)  Soon thereafter, defendant
8  changed S.D.'s cellphone number because boys from various states
9  had obtained the number through the "Kelly" MySpace account and
10  had actually contacted S.D. (<u>Id.</u> at 117, l. 19-24.)

11      Rational jurors could infer that this incident alerted
12  defendant to the risks posed by the Internet and, specifically,
13  MySpace.  In addition, Ms. Meier called defendant after Ms. Meier
14  discovered the "Kelly" MySpace account and instructed her not to
15  allow M.T.M. to use the computers in the Drew home, supporting
16  the inference that Ms. Meier placed defendant on notice that S.D.
17  and M.T.M. did something wrong by creating the fake "Kelly"
18  MySpace account.  Despite learning this, defendant nevertheless
19  created the fake "Josh Evans" MySpace account.  A rational jury
20  viewing this evidence, as well as the fact that defendant was
21  placed on notice multiple times that her conduct was wrong, and
22  sought to destroy evidence of the fake "Josh Evans" MySpace
23  account once she learned of M.T.M.'s suicide, in the light most
24  favorable to the government, could infer that defendant used the
25  fake MySpace account with the required intent of accessing the
26  MySpace servers "without authorization" and in excess of
27  authorization.
28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion for judgment of acquittal pursuant to Rule 29(a).

Dated: November 23, 2008

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

____/s/_____
MARK C. KRAUSE
Assistant United States Attorney

YVONNE L. GARCIA
Assistant United States Attorney

Attorneys for Plaintiff
United States of America