THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (SBN 198142)
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3493
     Facsimile: (213) 894-8601
     email: mark.krause@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>LORI DREW,<br><br>　　　　　Defendant. | No. CR 08-582-GHW<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL RULE 29 MOTION<br><br>Place: Courtroom of the<br>　　　　Hon. George H. Wu |

　　　Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Mark C. Krause, hereby files this response to defendant's supplement to Rule 29 motion.

1  This response is based on the attached memorandum of points
2  and authorities, the files and records in this case, and whatever
3  argument or evidence this Court may consider.
4  Dated: March ___, 2009

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

MARK C. KRAUSE
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   INTRODUCTION

On November 26, 2008, defendant Lori Drew was convicted of three counts of unauthorized access to a protected computer to obtain information, in violation of 18 U.S.C. § 1030(a)(2)(C). On that date, defendant asked for an extension of time within which to file a motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29 motion"). On December 15, 2008, defendant filed a Rule 29 motion in effect claiming that the Court incorrectly instructed the jury on the meaning of the terms "unauthorized" and "in excess of authorization" because those terms, as a matter of law, could not be construed in reference to rules promulgated by the owners of those computers. On January 2, 2009, defendant filed a reply raising a host of new arguments. The Court held a hearing on defendant's motion on January 8, 2009.

On February 17, 2009, defendant filed a new brief in support of her Rule 29 Motion. Although defendant reiterates her claim that conduct in violation of website Terms of Service ("TOS") while accessing a computer cannot be considered "unauthorized" or "in excess of authorization" under Section 1030 as a matter of law, she now contends that a trend has developed since the Court's hearing on her Rule 29 motion that supports her position. Specifically, defendant cites three out-of-circuit district court cases. Three cases does not a trend make. It is doubtful the one month survey she purports to make is even an acceptable

1

sample size and, even if it were, there have been still more cases contrary to defendant's position. Defendant's argument should be rejected.

## II. ARGUMENT

For almost a year now, defendant has claimed that there is a trend in which courts have increasingly held that conduct in violation of website TOS while accessing a computer cannot be considered "unauthorized" or "in excess of authorization" under Section 1030. This Court already has rejected that argument in denying defendant's pre-trial motions to dismiss and in instructing the jury as it has that "'access without authorization' means to access a computer without the approval, permission or sanction of the computer's owner." In her latest brief, defendant claims, based on a one month sample, that (1) <u>now</u> a trend exists, (2) the Court should reverse its prior rulings, and (3) her convictions should be overturned. In an attempt to bolster her argument, defendant cites three district court cases. Defendant's argument is still meritless.

### A. RECENT CASES CONSTRUING SECTION 1030 DO NOT DEMONSTRATE A TREND TOWARD A JUDICIALLY NARROWED DEFINITION OF "UNAUTHORIZED"

First, defendant's brief omits several contrary cases from the same time period. Contrary to defendant's claims, there is a wealth of authority against defendant's position and from the same time frame as defendant's cases. <u>eBay Inc. v. Digital Point Soluns.</u>, 2009 WL 481269 (N.D. Cal. Feb. 24, 2009) ("Allegations with respect to access and use beyond those set forth in a user

agreement constitute unauthorized use under the CFAA"); <u>Motoroloa v. Lemko Corp.</u>, 2009 WL 383444 at *6-7 (N.D. Ill. Feb. 11, 2009); <u>Ervin & Smith Advertising and Public Relations, Inc.</u>, 2009 WL 249998 *8 (D. Neb. Feb. 3, 2009) (relying, in part, on written agreement to hold that "while the defendants ordinarily may have been authorised to access the information they appropriated from Plaintiff, that authorization was terminated when Defendants destroyed the agency relationship by accessing and appropriating the protected information for their own purpose"); <u>Shade v. Gorman</u>, 2009 WL 196400 at *3 (N.D. Cal. Jan. 28, 2009) (complaint adequately stated claim even though complaint alleged that initial access was authorized and became unauthorized through misuse); <u>see also</u> <u>Teksystems inc. v. Modis, Inc.</u>, 2008 WL 5155720 at *4-5 (N.D. Ill. Dec. 5, 2008); <u>Southeastern Mech. Servs. V. Brody</u>, 2008 WL 4613046 at *14-15 (M.D. Fla. Oct. 15, 2008).

B.  MULTIPLE COURTS OF APPEAL HAVE RECOGNIZED THE BROAD CONSTRUCTION OF SECTION 1030

Second, defendant continues to ignore the fact that multiple courts of appeal have rejected her position. <u>United States v. Reyeros</u>, 537 F.3d 270, 277 n.10, 278, 289, (3d Cir. 2008) (upholding conviction under Section 1030 following customs inspector's misuse of customs computer database to assist Colombian drug gang); <u>International Airport Centers v. Citrin, LLC</u>, 440 F.3d 418 (7th Cir. 2006); <u>EF Cultural Travel v. Zefer Corp.</u>, 318 F.3d 58, 63 (1st Cir. 2003); <u>EF Cultural Travel VB v. Explorica, Inc.</u>, 274 F.3d 577 (1st Cir. 2001).

Indeed, defendant's repeated claim that there have been no

3

prior, similar applications of Section 1030 in criminal prosecutions is baseless. In Reyeros, for example, the defendant appealed his convictions for (1) conspiracy to import cocaine in violation of 21 U.S.C. § 963; and (2) unauthorized access to a Customs computer in violation of 18 U.S.C. § 1030(a)(2)(B), (c)(2)(B). The defendant had been an inspector with the United States Customs Service and had conspired with unnamed co-conspirators to import cocaine into the United States in cargo containers. Id. at 274. In furtherance of that conspiracy, defendant used his access to Customs computer databases to identify containers designated for inspection by Customs and provided that information to his co-conspirators to help them smuggle in contraband in uninspected cargo containers. Id. The defendant argued his convictions were not supported by sufficient evidence. Although the Third Circuit declined to explicitly address his sufficiency challenge to his 1030 conviction, id. at 277 n. 10, the court noted that defendant "acknowledge[d] that the evidence presented by the government [was] sufficient to support a finding that he accessed the Customs computer database for an improper reason . . . a concession practically compelled by the evidence, id. at 278. The Third Circuit then affirmed both of defendant's convictions. Id. at 289.

Although the Third Circuit's analysis was not explicit, its holding necessarily rejects defendant's claim that Section 1030 does not embrace a prosecution of a defendant who has permission to access a computer for one purpose but whose misuse of that

4

computer for another, prohibited purpose violates the rules and regulations put in place for the use of that computer. Just as in <u>Reyeros</u> where the customs agent's access of the customs computer violated Section 1030 because its misuse (to further the goals of a Colombian drug gang) was contrary to his duties as a customs agent (even though he was authorized to use that computer), defendant's access of the MySpace computers here was without authorization and in excess of authorization because it was contrary to the rules for the use of those computers as set forth in the MySpace TOS.

C.   DEFENDANT'S CITATIONS ARE NOT PERSUASIVE

Finally, the cases cited by defendant are unpersuasive.

1.   <u>US Bioservices Corp v. Lugo</u>, 2009 WL 151577 (D. Kan Jan. 21, 2009)

Defendant first cites <u>US Bioservices</u> to support her claim that courts have increasingly adopted a more narrow construction of Section 1030. That decision is not persuasive, however. In that case, after acknowledging that courts had split over their construction of the meaning of "without authorization" and "in excess of authorization," the court purported to reject the Seventh Circuit's analysis in <u>Citrin</u> and adopt a narrow interpretation of Section 1030 because it claimed the Seventh Circuit's construction conflated the meanings of "without authorization" and "exceeds authorized access." <u>Id.</u> at *3. The court next reasoned that the legislative history of Section 1030 demonstrated that the statute was only intended to apply to hackers, relying on statements made by two senators when the

5

statute was amended in 1986 to substitute "exceeds authorized access" for the phrase "having accessed a computer without authorization, uses the opportunity such access provides for purposes to which such authorization does not extend." Id at 4. Finally, the court reasoned that a broader construction of the statute would expand its scope too much. Id.

None of those explanations has merit. First, the US Bioservices court simply ignored the Seventh Circuit's distinction between the "without authorization" and "exceeds authorized access" prongs of the statute. See Citrin, 440 F.3d at 420-21. Likewise, the Bioservices court's resort to legislative history was both unnecessary and misplaced. On one level, reliance on the legislative history was unnecessary because the statutory language is clear. See Whitfield v. United States, 543 U.S. 209, 215 (2005) ("Because the meaning of [the statute's] text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history."). In addition, the reference to legislative history was misplaced because the court relied exclusively on the statements of just two senators -- not the legislature as a whole. Alex v. City of Chicago, 29 F.3d 1235, 1239 n.3 (7th Cir. 1994) ("[I]solated remarks of individual legislators, ... [can]not be used to find ambiguity, or contrary intent, in statutory language that, with respect to a case in hand, is clear on its own terms without rendering nugatory the 'plain meaning' canon of construction."). As explained in prior briefs, in the 1986 amendments, Congress

6

attempted to "substitute" the phrase "exceeds authorized access," which it defined, for the phrase "having accessed a computer without authorization, uses the opportunity such access provides for purposes to which such authorization does not extend." S. Rep. 99-432, 1986 U.S.C.C.A.N. 2479, 2486. The Senate Report explicitly stated that it imposed the change to "simplify" the language, suggesting that it did not expect to change the scope of the CFAA, particularly because the Committee Report stated that it sought to "expand" the statute. See also Sen. Rep. 101-544 available at 1990 WL 201793 ("The Computer Fraud and Abuse Act of 1986 . . . clarified and expanded the existing statute").[1] Finally, the Bioservices court lacked the authority to limit the scope of the statute based on its federalism considerations. United States v. Turkette, 452 U.S. 576 (1981) (where Congress knew that RICO would alter federal-state balance in enforcement of criminal law, courts are "without authority to restrict the application of the statute" on federalism grounds); Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

---

[1] Also as explained previously, to the extent those two senators sought to limit the scope of Section 1030, they did so to protect federal employees under 18 U.S.C. § 1030(a)(3) when accessing information on government computers, particularly in connection with requests under the Freedom of Information Act. 1986 U.S.S.C.A.N. at 2494-95; see also 1986 U.S.C.C.A.N. at 2485-86. Nothing in their statements suggests that those senators sought to immunize the conduct of outsiders who access a website operated by a private party in violation of the rules -- and the authorization granted by -- that private party.

7

2.  *Lasco Foods Inc. v. Hall and Shaw Sales, Marketing & Consulting LLC*, 2009 WL 151687 (E.D. Mo. Jan. 22, 2009)

Nor is defendant's citation of Lasco Foods any more helpful. Defendant cites Lasco Foods for the proposition that deception cannot be a basis for a violation of Section 1030 or Section 2701. (Def's Br. at 5). The plaintiff in that case had contended that the defendant employees' access of its computer system was "unauthorized" because their permission to access the system was procured by fraud. Id. at *3. In dismissing the plaintiff's claims under 18 U.S.C. § 1030 and 18 U.S.C. § 2701, the court reasoned that deception, as a matter of law, can never render access to a computer system "unauthorized" or in excess of authorization. Id. ("This 'deception,' as pled, however, is not SECA violation. Where a party consents to another['s] access to its computer network, it cannot claim that such access was unauthorized.") (citation omitted). That proposition, however, has been explicitly rejected by the Ninth Circuit. *Theofel v. Farey Jones*, 359 F.3d 1066 (9th Cir. 2004). The Ninth Circuit has explicitly recognized that fraud *can* be a basis for vitiating consent and causing access of a computer system to be unauthorized and in excess of authorization. Id. at 1073-74. Accordingly, Lasco is of little help in this Circuit.

3.  *Bridal Expo v. Van Florenstein*, 2009 WL 255862 (S.D. Tex. Feb 3, 2009)

Finally, defendant's reliance on Bridal Expo is also problematic. In that case, the district court granted the defendant's motion to dismiss the plaintiff's Section 1030 claims

8

in a civil employment dispute. Id. at *12. In doing so, it reasoned that the rule of lenity required that the statute be construed narrowly.[2]

The rule of lenity, however, only provides that when a statute's language is "grievously" ambiguous, the court should construe the statute in favor of the accused. Chapman v. United States, 500 U.S. 453. 462-63 (1991). Because the rule of lenity only applies when the language is ambiguous, the Ninth Circuit has rejected requests to apply the rule of lenity upon concluding that the statutory language at issue was clear. United States v. Banks, 514 F.3d 959 (9th Cir. 2008); United States v. Carr, 513 F.3d 1164 (9th Cir. 2008). Here, the rule of lenity does not apply because the statutory language is unambiguous. As explained previously, accessing a computer in contravention of a website operator's rules for that service is "unapproved," "not permitted," "not sanctioned," and, therefore, "unauthorized." Alternatively, access to "obtain . . . information in the computer that the accesser is not entitled so to obtain" by definition exceeds one's authorized access. 18 U.S.C. § 1030(e)(6). The fact that some courts have differed in their interpretation of the meaning of "unauthorized" is of no moment and does not justify a finding of ambiguity. Lisbey v. Gonzales,

---

[2] It also reasoned, like the US Bioservices court, that Section 1030 could not be read to cover situations where employees accessed computers in violation of contractual arrangements because it would conflate the two prongs under Section 1030 related to "access without authorization" and "access in excess of authorization." Id. at *6. In doing so, the court ignored the Seventh Circuit's analysis. See supra.

9

420 F.3d 930, 933 (9th Cir. 2005); see also Pearson, 321 F.3d at 790 ("Lenity cannot be invoked merely because a different reading of the statute is possible."). And because the remaining aids to construction likewise favor this plain reading of the statute, reliance on the rule of lenity is inappropriate. Lisbey, 420 F.3d at 933 ("We have declared statutes ambiguous and applied the rule of lenity only when "'a reasonable doubt persists about a statute's intended scope even <u>after</u> resort to the language and structure, legislative history, and motivating policies of the statute.'").[3]

In sum, this Court has already rejected defendant's legal arguments by denying her motion to dismiss the indictment, rejecting her proposed jury instruction and adopting the instruction on "access without authorization" that it gave to the jury. The Court should likewise reject defendant's Rule 29 motion.

---

[3] The court also largely ignored United States v. Phillips, 477 F.3d 215 (5th Cir. 2007). Although it attempted to distinguish that case, 2009 WL 2255862 at n.9, it was required to acknowledge that the Fifth Circuit explicitly held that "courts have recognized that authorized access typically arises only out of a contractual or agency relationship." Id. at 220-21. The Wedding Expo court, however, also inexplicitly ignored the Phillips court's ruling in rejecting the defendant's claim to "authorized" use that his conduct was not permitted by UT's acceptable computer use policy. Id. at 221 ("While Phillips was authorized to use his UT email account and engage in other activities defined by UT's acceptable computer use policy, he was never authorized to access TXClass."). Accordingly, Wedding Expo is of doubtful reliability even in the Fifth Circuit.

10