THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (SBN 198142)
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual Property Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3493
    Facsimile: (213) 894-8601
    Email: mark.krause@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR NO. 08-582-GW |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S RESPONSE TO |
| v. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| LORI DREW, | ) | |
| | ) | Sentencing Date: 5/18/2009 |
| Defendant. | ) | Time: 8:00 a.m. |
| | ) | Honorable George H. Wu |
| | ) | |

    Plaintiff United States of America, by and through its
counsel of record, Assistant United States Attorney Mark C.
Krause, respectfully files its Response to Defendant's Sentencing
Memorandum.

///

///

///

///

///

1    This filing is based on the included memorandum of points

2  and authorities, any oral argument permitted on these issues, and

3  all files and records of this case.

4  Dated: May ⅛ , 2009

5                        Respectfully submitted,

6                        THOMAS P. O'BRIEN
                         United States Attorney
7
                         CHRISTINE C. EWELL
8                        Assistant United States Attorney
                         Chief, Criminal Division
9

10                       _____

11                       MARK C. KRAUSE
                         Assistant United States Attorney
12
                              Attorneys for Plaintiff
13                            United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    2

### MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

On November 26, 2008, defendant Lori Drew was convicted of three counts of unauthorized access to a protected computer to obtain information, in violation of 18 U.S.C. § 1030(a)(2)(c). On May 3, 2009, defendant filed her sentencing position claiming that a probationary sentence would be adequate but complaining that a fine would be burdensome.

Although the government's position regarding guideline and Section 3553 factors is addressed in its prior filing, the government files here to address defendant's objection to the Court hearing any statements at sentencing from M.T.M.'s parents, Ron and Tina Meier.  Defendant's argument is inconsistent with the Crime Victim Rights' Act, Ninth Circuit authority, and the structure of the sentencing statutes.  Depriving the Meier family of their right of allocution at sentencing would be error.

II.   ARGUMENT

A.    THE MEIER'S ARE VICTIMS WITHIN THE MEANING OF THE CRIME VICTIM RIGHTS' ACT

Under federal law, victims have a statutory right to be heard at sentencing.  Specifically, the crime victims' rights statute provides that a victim has a right "to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding."  18 U.S.C. § 3771(a)(4).  As the Ninth Circuit has observed, the CVRA was passed in order to accord victims of crimes standing to assert certain procedural and substantive rights, among them the right to be heard at sentencing; the reasons for this are not merely to

1

1 affect the sentence, but also to provide dignity to the victims

2 and to force the defendant to confront the cost of his crimes:

> [The CVRA] was enacted to make crime victims
> independent participants in the criminal justice
> system. Prosecutors and defendants already have the
> right to speak at sentencing; our interpretation puts
> crime victims on the same footing. Our interpretation
> also serves to effectuate other statutory aims: (1) To
> ensure that the district court doesn't discount the
> impact of the crime on the victims; (2) to force the
> defendant to confront the human cost of his crime; and
> (3) to allow the victim "to regain a sense of dignity
> and respect rather than feeling powerless and ashamed."

9 Kenna v. U.S. Dist. Court for C.D. Cal., 435 F.3d 1011, 1016 (9th

10 Cir. 2006) (citing Jayne W. Barnard, Allocution for Victims of

11 Economic Crimes, 77 Notre Dame L. Rev. 39, 41 (2001)); see also

12 United States v. Vampire Nation, 451 F.3d 189, 197 n.4 (3d Cir.

13 2006).

14    The Meiers plainly fall within the definition of victim

15 under the CVRA.  "For the purposes of this chapter, the term

16 'crime victim' means a person directly and proximately harmed as

17 a result of the commission of a Federal offense or an offense in

18 the District of Columbia."  18 U.S.C. § 3771(e); United States v.

19 Sharp, 463 F.Supp. 2d 556, 560-61 (E.D. Va. 2006) (holding that

20 domestic partner of defendant drug dealer's client was not victim

21 of drug dealer within meaning of MVRA where partner claimed that

22 the injuries inflicted by her boyfriend were the result of

23 defendant selling drugs to her boyfriend); see also In re

24 Antrobus, 519 F.3d 1123, 1125 (10th Cir. 2008) (noting lack of

25 case law); In re Stewart, 552 F.3d 1285, 1288 (11th Cir. 1008)

26 (determining whether an individual is a crime victim under the

27 CVRA by first identifying the behavior constituting "commission

28 of a federal offense," then the direct and proximate effects of

2

that behavior on parties other than the United States; "if the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA"). The legislative history demonstrates the term "victim" was intended to be read broadly. During floor debate on the Act, Senator Jon Kyl, one of its primary sponsors, noted that the definition of "victim" in the CVRA is an "intentionally broad definition because all victims of crime deserve to have their rights protected, whether or not they are the victim of the count charged." 150 Cong. Rec. S10910, 10912 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl).[1]

Although there is little precedent construing the definition of victim under the CVRA, courts have construed the term "victim" in the context of two different statutes containing similar defining language -- the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act of 1986 ("MVRA"), 18 U.S.C. § 3663A. Sharp, 463 F. Supp. 2d at 560-61. In such cases, "'the main inquiry . . . [is] whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct.'" United States v. De La Fuente, 353 F.3d 766, 772 (9th

---

[1] Although floor statements are not given the same weight as some other types of legislative history, such as committee reports, because they generally represent only the view of the speaker and not necessarily that of the entire body, floor statements by the sponsors of the legislation are given considerably more weight than floor statements by other members, and they are given even more weight where, as here, other legislators did not offer any contrary views. Kenna, 435 F.3d at 1015 (internal citation omitted). Since no one registered disagreement with Senator Kyl on this point, this Court may reasonably infer that the views he expressed reflected at least a consensus in the enacting body, the United States Senate. Id. at 1015-1016.

1   Cir. 2003) (quoting <u>United States v. Meksian</u>, 170 F.3d 1260, 1263

2   (9th Cir. 1999)). Defendant's conduct need not be the sole cause

3   of the loss suffered by the victim, so long as the causal chain

4   does not extend so far in terms of time span and facts to become

5   unreasonable. <u>Id.</u> Accordingly, the Ninth Circuit has repeatedly

6   affirmed restitution awards even where the harm caused to victims

7   was unintended or the result of multiple links on the causal

8   chain. <u>Id.</u> (because defendant's conduct resulted in the need for

9   anthrax remediation, district court properly required defendant

10  to pay costs associated with that remediation; <u>United States v.</u>

11  <u>Hackett</u>, 311 F.3d 989, 992-93 (9th Cir. 2002) (affirming award

12  where crime was aiding and abetting the manufacture of

13  methamphetamine, burning down of house where manufacturing took

14  place was direct and proximate result of crime); <u>United States v.</u>

15  <u>Laney</u>, 189 F.3d 954, 966 (9th Cir. 1999) (affirming award where

16  crime was conspiracy to engage in activities relating to the

17  sexual exploitation of children); <u>United States v. Sanga</u>, 967

18  F.2d 1332, 1333-34 (9th Cir. 1992) (where crime was conspiracy to

19  smuggle an alien, incidental harms caused when defendant enslaved

20  and raped alien were direct and proximate results of the crime).

21      In <u>Hackett</u>, for example, the Ninth Circuit held Farmer's

22  Insurance Corporation was a victim within the meaning of the MVRA

23  after the defendant's illicit methamphetamine lab caused a fire

24  which led to the destruction of a house for which Farmer's was

25  contractually obliged to pay a claim. 311 F.3d at 993. The

26  defendant argued that aiding and abetting the manufacture of

27  methamphetamine was not a direct and proximate cause of the fire.

28  <u>Id.</u> at 992. The district court disagreed and the Ninth Circuit

4

1  affirmed.  The Ninth Circuit reasoned that "[t]he main inquiry

2  for causation in restitution cases is whether there was an

3  intervening cause, and, if so, whether this intervening cause was

4  directly related to the offense conduct." Id. (citing United

5  States v. Meksian, 170 F.3d 1260, 1263 (9th Cir. 1999)).  It

6  therefore reasoned that although "there [were] multiple links in

7  th[e] causal chain," the defendant's conduct was "directly

8  related to the cause of the fire" because the defendant "had

9  knowledge and understanding of the scope and structure of the

10 enterprise," had procured the supplies, and the manufacturing

11 operations caused the fire.  Id. at 993.[2]

12      Using this analysis, and just as in Hackett, Tina and Ron

13 Meier are unquestionably victims within the meaning of the CVRA.

14 The evidence at trial demonstrated that the death of M.T.M. was

15 the direct result of the scheme for which defendant was convicted

16 -- the unauthorized access of protected computers.  There is no

17 dispute that M.T.M.'s death immediately followed the cruel and

18 abrupt rejection of M.T.M. by "Josh Evans," the vehicle of

19 defendant's campaign of harassment.  Even more telling, however,

20 are M.T.M.'s last words that "Josh Evans" was the kind of guy a

21 girl would kill herself over.  As M.T.M.'s own words explain, her

22

23      [2]This broad construction of "victim" is also consistent with
    other provisions of Federal law.  United States v. Booker, 543
24  U.S. 220 (2005), directs courts to consider, inter alia, the
    advisory Guidelines, the grounds raised by counsel, defendant's
25  allocation, victim statements, other evidence, and the factors
    set forth in Section 3553(a).  Vampire Nation, 451 F.3d at 197.
26  Even Section 3661 provides that "[n]o limitation shall be placed
    on the information concerning the background, character, and
27  conduct of a person convicted of an offense which a court of the
    United States may receive and consider for the purpose of
28  imposing an appropriate sentence."

1  death was the direct result of defendant's vindictive assault.

2      The government expects that M.T.M.'s parents will describe

3  the effect of defendant's conduct on M.T.M., as well as on

4  themselves, their family, and their remaining juvenile daughter.

5  But for and as a proximate cause of defendant's scheme, M.T.M.

6  lost her life and the Meier family was irrevocably changed.

7  Defendant cannot be heard to say that her crimes of conviction

8  had nothing to do with the tragedy suffered by the Meier family.

9  They have and deserve a right to be heard at sentencing.

10  B.    DEFENDANT'S AUTHORITIES ARE INAPT

11      Defendant nonetheless relies on two out of circuit

12  authorities for the proposition that the Meiers are not "victims"

13  of her conduct.  United States v. Sharp, 463 F. Supp.2d 556 (E.D.

14  Va. 2006); United States v. Hunter, 548 F.3d 1308 (10th Cir.

15  2008).  Not only are those cases inconsistent with the Ninth

16  Circuit's decision in Hackett, 311 F.3d at 993, their analysis is

17  inapt, particularly given the unique facts of this case.

18      1. United States v. Sharp

19      In Sharp, the district court refused to allow the ex-

20  girlfriend of the defendant drug dealer's client to allocute upon

21  concluding that she was not a "victim" within the meaning of the

22  CVRA.  Id. at 558.  The individual claimed that her ex-boyfriend

23  used to purchase marijuana from the defendant and, while under

24  the influence of those drugs, assaulted her.  Id. at 559.  She

25  therefore reasoned that she was a victim of the defendant's drug

26  dealing in that defendant's conduct in selling her ex-boyfriend

27  marijuana resulted in her boyfriend abusing her, either as a

28

byproduct of withdrawal or by exacerbating his latent mental problems.   The district court granted the defendant's motion to preclude her from testifying at sentencing.   First, the district court relied on Fourth Circuit authority to hold that "an individual is only 'directly and proximately harmed'" when the harm results from "conduct underlying an element of the offense of conviction."   Id. at 563.   The court then reasoned that the "specific conduct" underlying the elements of conspiracy to possess with intent to distribute marijuana did not include assault and battery or other violent conduct.   Id. at 565. Second, the district court reasoned that the individual claiming victim status had failed to establish an adequate nexus between the defendant's conduct and the injuries she suffered at the hands of her boyfriend.   Id. at 566-67.

Hunter is not persuasive.   First, the Fourth's Circuit's restrictive elements test does not apply.   As explained above, the Ninth Circuit's decision in Hackett demonstrates the Ninth Circuit does not apply the restrictive elements test but simply considers, if there was an intervening cause, "whether this intervening cause was directly related to the offense conduct." Hackett, 311 F.3d at 993.   Second, even if the Ninth Circuit were to apply an elements test, the Meiers would still be victims under the CVRA.   As outlined above, unlike the defendant in Sharp, whose "specific conduct" in possessing marijuana with the intent to distribute bore no relationship to violent conduct, the defendant's conduct here directly and proximately caused M.T.M.'s emotional injury.   As outlined at trial, defendant's conduct in

7

accessing the computers without authorization and in excess of

authorization resulted in her obtaining information used to

torment and abuse M.T.M.  That was, after all, the purpose of her

conduct.  Finally, the evidence at trial demonstrates that there

was a close nexus between defendant's conduct and the injury

suffered by M.T.M. and M.T.M.'s family.  After all, M.T.M.

described "Josh Evans" as the kind of guy a girl would kill

herself over and she did in fact tragically take her life at the

end of the scheme.

    2.   United States v. Hunter

    Hunter, cited by defendant, is even less helpful.  In

Hunter, the defendant had sold a firearm to a juvenile who, eight

months later, used that firearm to kill another juvenile.  548

F.3d 1311.  The defendant subsequently pleaded guilty to being a

drug user in possession of a firearm and unlawfully transferring

a firearm to a juvenile.  Id. at 1310.  The parents of the

shooting victim moved under the CVRA to be recognized as victims

of the defendant's offenses.  Id.   The district court denied

that request.  It noted that the there was an eight month gap

between the gun sale and the juvenile's shooting spree.  It also

concluded that it was not foreseeable that the juvenile would use

the gun to kill their daughter.  Id.  The parents then filed an

appeal seeking to reopen the sentencing.  Both parties opposed

the request and the Tenth Circuit dismissed the appeal.  Id. at

1311.  It did so exclusively on jurisdictional grounds, however,

concluding that nonparties lack the ability to appeal a case that

would have the effect of reopening a criminal case following

1  sentencing.   548 F.3d at 1310.

2       To the extent defendant is seeking to rely on the Tenth

3  Circuit's opinion, that holding is inapt because it only

4  addressed the ability of non-parties to appeal a sentencing when

5  it would have the effect of reopening the case.  To the extent

6  defendant is seeking to rely on an unpublished district court

7  decision whose reasoning is only alluded to in another opinion,

8  defendant's citation is of doubtful merit.  But even if the Court

9  were to consider the facts before the district court in Hunter,

10 that case is distinguishable.  The defendant's conduct in Hunter

11 was not considered to be the proximate cause of the parents'

12 injury because of an eight month gap in time.  Here by contrast,

13 M.T.M.'s injury was not only the goal of the scheme, it was

14 realized as her tragic death immediately followed the scheme.

15 Nor can it be said that M.T.M.'s injury was not foreseeable as

16 the evidence at trial established that defendant sought to

17 torment M.T.M. and was aware of her mental state.

18      Accordingly, defendant's citations are not persuasive and

19 are contrary to Hackett.

V.    CONCLUSION

    For the foregoing reasons, the government respectfully reiterates its requests that the Court sentence defendant to three years in custody, a one year period of supervised release, and a fine of $5,000.

Dated: May ___, 2009

                        Respectfully submitted,

                        THOMAS P. O'BRIEN
                        United States Attorney

                        CHRISTINE C. EWELL
                        Assistant United States Attorney
                        Chief, Criminal Division


                        _____
                        MARK C. KRAUSE
                        Assistant United States Attorney

                        Attorneys for Plaintiff
                        United States of America