H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753

Orin S. Kerr
Dist. of Columbia BN 980287
2000 H. Street NW
Washington, DC 20052
202-994-4775
Fax 202-994-5654
okerr@gwu.edu


Attorneys for Defendant
LORI DREW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>   vs.<br><br>LORI DREW,<br><br>      Defendant. | Case No.  CR-08-582-GW<br><br>REPLY TO GOVERNMENT SENTENCING BRIEF<br><br>Sentencing Date: May 18, 2009<br>Time: 9:00 AM |

Comes now defendant Lori Drew, together with counsel, and responds to the government's sentencing brief.


Dated: May 13, 2009          s./ H. Dean Steward
                                    H. Dean Steward
                                    Orin Kerr
                                    Counsel for Defendant
                                    Lori Drew

- 1 -

I. Introduction

Attorney General (later Associate Justice) Robert H. Jackson famously warned a roomful of United States Attorneys about the single greatest danger of prosecutorial abuse:

> If the prosecutor is obliged to choose his cases, it follows that he can choose his defendants.  Therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted.  With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone.  In such a case, it is not a question of discovering the commission of a crime and then looking for the man who has committed it, it is a question of picking the man and then searching the law books, or putting investigators to work, to pin some offense on him.  It is in this realm in which the prosecutor picks some person whom he dislikes or desires to embarrass, or selects some group of unpopular persons and then looks for an offense, that the greatest danger of abuse of prosecuting power lies.

Robert H. Jackson, The Federal Prosecutor, 24 J. Am. Jud. Soc'y 18 (1940).

This entire prosecution has been a case study of the dangers Justice Jackson identified.  The entire point of the prosecution has been to try to make Lori Drew a symbol of cyberbulling. The government "search[ed] the law books . . . to pin some offense on"

- 2 -

her, and then it devised a novel theory that renders millions of Americans felons for their everyday conduct. Even then, the government could only get a conviction for three misdemeanors, all unrelated to cyberbullying. The alleged crime: assisting another person, Ashley Grills, in the violation of the Terms of Service of MySpace.com.

Undeterred, the government now seeks the statutory maximum punishment: one year in prison for every Terms of Service violation. On one level, the fact that the government is seeking three years in prison for misdemeanors is shocking. But of course it is in keeping with the government's view of the case. The government's case is all about making Lori Drew a public symbol of cyberbullying. The government has created a fiction that Lori Drew somehow caused M.T.M's death, and it wants a long prison sentence to make its fiction seem real.

Fortunately, this is a court of law, not a television drama. This Court should squarely reject the Government's sentencing recommendation.


II. Facts

The government's version of the facts presented in its sentencing memo ignores much of the trial testimony of their own witnesses. This Court heard the testimony and evidence, and can easily evaluate the government's assertions. However, the defense takes particular issue with the government's claim that "Defendant coldly conceived of a scheme to humiliate a vulnerable girl"- govt. memo, p. 1. This is simply false.

First of all, Ashley Grills thought up the profile, not Lori Drew. Grills clearly admitted this in her testimony. [RT 11-20-08, p. 8; "AUSA: A fake MySpace account? Grills: Yes. AUSA: And who's idea was that? Grills: That one was mine."]. Of course, the purpose of the government's prosecution is to make Lori Drew a public symbol of cyberbullying, so the government chose to prosecute Drew instead of Grills for actually devising and carrying out the plan. That was a choice for the government to make. But it cannot prosecute a secondary player in a scheme and then simply pretend that the secondary player was the leader.  The Court should follow the evidence, not the government's fictional retelling.

Further, the government's claim that Drew acted to humiliate M.T.M. is not supported by the evidence.[1] Its claim that Drew knew that M.T.M. was "vulnerable" is also not supported by the evidence, as the defense's sentencing memorandum explains.


III. Guideline Calculations

The Probation Officer correctly calculated the advisory Guideline range in this matter.  The Probation Officer treated this case for what it was and is: a misdemeanor violation of the Computer Fraud and Abuse Act with a dollar loss of zero. The advisory Guideline range is correctly 0-6 months for the reasons set out in the PSR.

---

[1] Reporter Phil Shumann, Fox 11 News to juror Ms. T., on the courthouse steps, post-verdict: "Why did Drew do what she did?" Juror Ms. T.: "She did it to get information." Shumann: "Did she do it to harass M.T.M.?" Juror Ms. T.: "No."  November 26, 2008.

The Probation Officer also properly found that the death of M.T.M. was not foreseeable.  This is surely correct based on the evidence.  The Josh Evans profile was in existence for 27 days.  It is undisputed that no angry or bullying messages were sent until the 26th day, October 15, 2006.  At that time, during the evening of October 15th, juvenile J.M. sent a message to M.T.M. posing as Josh Evans. It is undisputed that Lori Drew had nothing to do with that message.   On October 16th, the last day of the existence of the Evans account, Ashley Grills wrote and sent the message about the world being a better place without M.T.M.  In December of 2006, Grills told the FBI that Lori Drew was not home when all of this occurred, and S.D. confirmed this at trial, as did FBI Agent Billy Cox.

It is simply unforeseeable that a death would result from the few non-threatening messages that Ms. Drew was aware of.  The tragic death of M.T.M. was a shock to everyone.[2]  It is in keeping with the government's theory of the case to say that Lori Drew somehow caused M.T.M.'s death. The government wants the narrative to be that Lori Drew bullied M.T.M. into committing suicide. This Court should stick to the facts and testimony that the Court observed during the trial.  The government's narrative simply does not match the evidence.

---

[2] "As jurors streamed out of the Courtroom Wednesday, nearly all declined to speak with reporters. One, who identified himself only by his first name of M_____, said he felt the case was a tragedy for both the Meiers and the Drews, and that neither family could have anticipated what happened." *Los Angeles Times*,  California sec. p. 1 , Nov. 26, 2008

-5-

IV. 18 USC § 3553(a) Factors

    The government's argument for a high sentence boils down to this: "Defendant has become the public face of cyberbullying." Govt. memo, p. 17. Having become "the public face of cyberbullying," Drew must be punished severely to deter others. As the Government puts it, "[a] probationary sentence might embolden others to use the Internet to torment or exploit children." Govt. memo, p. 17

    This is utterly absurd.  From day one, the goal of the government's case has been to make Lori Drew the public face of cyberbullying.  It conjured up a novel theory to prosecute Drew after the District Attorney's Office of St. Charles County, Missouri and the U.S. Attorney's Office in Missouri concluded that she had committed no crime.  It gave immunity to the individual who actually created the account and who sent the critical messages. It then had her testify against the defendant, who did neither of these things.

    The government's own prosecution ensured that the name "Lori Drew" would be known to millions of Americans. If Lori Drew is the public face of cyberbullying, it is only because the prosecutors in this case have made that their goal.  Having worked to make Lori Drew the public face of cyberbullying, it is simply outrageous that the Government insists a long prison term is necessary because Drew has become the public face of cyberbullying.

    Further, the government's deterrence claim ignores the remarkable legislative response to the government's prosecution. The great majority of legal observers have expected that this Court or the Ninth Circuit will reject the government's theory that

violating Terms of Service violates an unauthorized access statute. (Given that the defense's motion to dismiss is still pending, the defense hopes that this Court will fulfill that expectation.) This understanding has triggered a nationwide rush to enact new state laws that specifically prohibit cyberbullying. See, e.g., Ashley Surden, In Several States, A Push to Stem Cyber-Bullying, The Washington Post, January 1, 2009 at A3 (summarizing state law developments).

Such efforts have occurred in Congress as well as state legislatures. Rep. Linda T. Sanchez and 14 other members of the U.S. House of Representatives have introduced H.R. 1966, "The M.T.M. Cyberbullying Prevention Act," that would create a new federal crime of cyberbullying. The purpose of the bill is to make cyberbullying a federal crime for the first time, on the assumption that violating Terms of Service is not an unauthorized access crime so the United States cannot validly prosecute cyberbullying under the existing 18 U.S.C. § 1030.

The rush to enact new statutes to prohibit cyberbullying, both at the state and federal level, reveals the absurdity of the government's claim that a severe prison sentence in this case is needed to deter cyberbullying. This prosecution has put cyberbullying on the front pages. Legislatures are now acting to prohibit it. The idea that a Court must impose a severe sentence for conduct that occurred before legislatures actually prohibited cyberbullying is absurd. The passage of statutes criminalizing cyberbullying will deter cyberbullying, not the imposition of a severe sentence in this case brought under the Computer Fraud and Abuse Act.

- 7 -

1

2   V. Conclusion

3      This case never should have been indicted.  The sentence

4 suggested by Probation -- minus the fine -- is reasonable, fair and

5 appropriate.

6

7 Dated: May 13, 2009      <u>s./ H. Dean Steward</u>

8                 H. Dean Steward
                Orin Kerr

9                 Counsel for Defendant

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on May 13, 2009, service of the defendant's:

**RESPONSE TO GOVT SENTENCING BRIEF**

On the following parties electronically by filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies counsel for that party.

**AUSA MARK KRAUSE- LA**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on MAY 13, 2009

H. Dean Steward

H. Dean Steward